367 P.2d 1

Chester H. MASON and Mary Mason, husband and wife; L. Dean Steffey and Iva Fern Steffey, husband and wife, Appellants,

v.

Ernest HASSO and Dorothy Hasso, husband and wife, Appellees.

No. 7157.

Supreme Court of Arizona,

En Banc.

Dec. 13, 1961.

Mahoney & Vincent, Florence, and Beverly J. McConnell, Phoenix, for appellants.

Reed, Wood & Platt and Gove L. Allen, Coolidge, for appellees.

JENNINGS, Justice.

This is an appeal from an action to quiet title to certain real property situated in Pinal County, Arizona. Following is the agreed statement of facts in brief: On the 23rd day of March, 1954, plaintiffs Ernest Hasso and Dorothy Hasso, hereinafter referred to as appellees, entered into an agreement with the defendants, L. Dean Steffey and Iva Fern Steffey, hereinafter referred to as the Steffeys, to purchase from the said Steffeys, together with other property, the following described property, to wit:

The South Half (S½) of the West Half (W½) of Section Thirty-one (31), Township One (1) North, Range Eight (8) East of the G. & S. R. B. & M., Pinal County, Arizona, recorded in the office of the County Recorder of Pinal County, Arizona, in Docket 102 at Page 526 thereof.

Pursuant to said agreement an escrow was on that date set up with the Phoenix Title & Trust Company, Mesa, Arizona, which escrow is still pending and in full force and effect.

On the same date Hassos (appellees) entered into an agreement to sell the above-described property to Chester H. Mason and Mary Mason, husband and wife, hereinafter referred to as appellants. No escrow was set up for this second agreement. The agreement provided that $100 was to be paid down, with a balance of $400 plus

5% interest to be paid on the down payment. The balance $1,750 was to be paid annually in installments of $350 or more plus 5% interest the first two years on the unpaid balance and 6% interest thereafter until the total purchase price of $2,250 was paid.

Upon execution of the agreement appellants paid to appellees the sum of $100. No payments on either principal, interest or taxes have been made by appellants since that time.

In April of 1955 (more than one year after execution of the agreement) appellants wrote a letter to appellees which read in part as follows:

"It would be impossible for us to go thru with the property deal and we are very sorry in more ways than one. We certainly have failed in our end of that bargain but I assure you we didn't intend for it to turn out this way. We had so many plans for that property and maybe if you don't sell it we can make new plans later when we have money before we plan anything. * * *"

No communication, either oral or written, was had between the parties until February 25, 1957 (almost two years later) when the appellees wrote to the appellants as follows:

" * * * I would like to know if you could take care of your present and past payments with your May 1st payment and your past payments of principle and interest * * *. If not, then please send me the papers * * * made between ourselves and I will return your down payment. Please leave me know soon if you can take care of your obligation."

Thereafter, and prior to the 1st of May, 1957, the appellants began negotiations with the Steffeys for the purchase by the latter of the property above described. No communication was had between the appellees and the appellants after the letter of February 25, 1957, until approximately the 10th day of April 1957, at which time the appellants contacted the appellees by telephone and advised them of the potential sale to the Steffeys.

On approximately the 11th day of April, 1957, the appellants entered into an agreement to sell the property to the Steffeys. The sum of $1,000 was deposited in escrow with the Surety Title & Trust Company of Florence, Arizona. On the 29th of October, 1957, an additional $2,500 was deposited by the Steffeys leaving a total of $3,500 on deposit. It is evident that appellants expected the payments by the Steffeys to discharge appellants' obligations to appellees.

By the time this action was filed April 25, 1957 (more than three years after the date of the agreement between appellants and appellees) the property valuation had risen from $2,250 to $8,000.

The issues before the trial court were whether the appellees were entitled to have their title to the real property in question quieted, subject to the contract of sale from the Steffeys or whether the contract of sale between the appellants and appellees was still in full force and effect.

The Steffeys did not file a counterclaim. Their answer, filed separately from appellants merely stated that the appellants had entered into an agreement to sell the property to the Steffeys and requested the return of the money they had deposited or the performance of the agreement with the appellants. The Steffeys were neither present in person nor represented by counsel on the trial of this action.

From a judgment ordering refund of the Steffeys' escrow money and declaring appellees the owners of a contract of purchase from the Steffeys entitling them to possession of the property, appellants claim error on the following grounds: (1) There was no evidence of the plaintiffs' offer to or ability to perform, (2) there was no evidence of plaintiffs' intention to declare a forfeiture of the defendants' interest prior to the time of suit, (3) there was no evidence of plaintiffs' acceptance of defendants' offer to rescind, and (4) there was no evidence of a waiver of or abandonment of defendants' interest in the property or rights under the contract.

It is unnecessary to consider item (1) above for it was not supported by proposition of law or by discussion. The words abandonment and forfeiture are used without much distinction in appellants' argument. Abandonment means the act of intentionally and voluntarily relinquishing a known right absolutely and without reference to any particular person or purpose. 1 Am.Jur., Abandonment, § 1, p. 4. Forfeiture is distinguished from abandonment in that it is enforced and involuntary and occurs without regard to intention. In the case of Gila Water Co. v. Green, 29 Ariz. 304, 241 P. 307, 308, this Court held:

"* * * There is a plain, fundamental distinction between an abandonment and a forfeiture. While to create an abandonment there must necessarily be an intention to abandon, yet such an intention is not an essential element of forfeiture in that there can be a forfeiture against and contrary to the intention of the party alleged to have forfeited."

On this same subject in the case of City of Tucson v. Koerber, 82 Ariz. 347, 313 P.2d 411, 418, we stated:

"* * * Abandonment involves an intention to abandon, together with an act or an omission to act by which such intention is apparently carried into effect, * * *."

■ It is axiomatic that the law abhors a forefeiture, and since in the instant case an abandonment by the appellants occurred in point of time prior to any action from appellees to repossess the property, we need not discuss the arguments concerning forfeiture.

■ Plainly appellants' failure to pay even the *balance* of the *down payment* called for in the agreement, their failure to make future yearly payments on the principal and interest, coupled with their unambiguous letter in April, 1955, conclusively signified in word and deed a complete abandonment of the property. In fact the appellants neither paid nor tendered to the appellees any payments on the principal or interest, neither paid nor tendered any taxes assessed against the property, made no claim to the property, and evidenced no interest therein until April, 1957, when they found the Steffeys were interested in buying the property and that the Steffeys would be willing to produce the money with which the appellants could make payments.

■ Contra to appellants' contention as evidence by item (3) in their assignment of error abandonment requires no act of the other party before it is complete. It is entirely unilateral and the moment the intention to abandon unites with acts of relinquishment, the abandonment is complete. Hull v. Clemens, 200 Or. 533, 267 P.2d 225. Appellants' contention that an abandonment by the purchaser cannot be effective until the vendor elects to accept it as contrary to the holdings of this Court in the cases of Gila Water Co. v. Green, supra, and City of Tucson v. Koerber, supra.

The case of Douglass v. Brooks, 242 N.C. 178, 87 S.E.2d 258, cited by appellants is distinguished from the instant case for the reason that lapse of time in making payment constituted the only evidence of abandonment and there was nothing to indicate that the purchaser had any intention of abandoning the contract, but to the contrary the purchaser desired to continue the payments and actually forwarded payments on the contract. Then too, the case of Lang v. Todd, 148 Neb. 726, 28 N.W.2d 434, is to be distinguished from the present case as that case deals with a statement to the effect that a purchaser will not perform on the date of performance or thereafter made *prior to breach* by him. This would at most constitute an anticipatory breach by the vendee and would require an affirmative act on the part of the vendor in order to foreclose the vendor's rights.

Kemmerer v. Title & Trust Co., 90 Or. 137, 175 P. 865, 866, involved a letter similar to the letter written by the appellants which was as follows:

"I wrote you a month or so ago asking for an extension of time in hopes of being able to make up my back payments on lot 4, Woodland Park Add. to Gearhart. I find however that I

will be unable to do so as I have some unlooked for bills that I have got to pay. I am up against it rather hard or would be able to keep this tract; however, I will have to let it go. Thanking you for the fair treatment I have received at your hands, I remain, yours truly, F. L. Kemmerer."

That court on page 868 of 175 P. held as follows:

"The plaintiff abandoned the contract. 39 Cyc. 1353. The letter written by Kemmerer on February 7, 1914, was equivalent to saying to the Title & Trust Company: 'I abandon the contract, and I waive and surrender whatever right I had to insist on additional time or notice of your intention to terminate the contract; notice to me would be an idle ceremony; and, since I do not require notice, you may terminate the contract without previous notice.' The law does not ordinarily require the doing of a vain thing. [Cases cited.] * * *"

Appellees' letter to appellants dated February 25, 1957 was at most an offer which the appellants did not accept and is similar to the situation in the case of Fisher v. Chaffee, 49 Cal.App.2d 97, 121 P. 2d 51, wherein the purchaser had repudiated the purchase contract and refused to make any further payments. The vendor brought an action to quiet title against the purchaser and the holder of a crop mortgage placed thereon by the purchaser. Judgment was entered in favor of the vendor. The holder of the crop mortgage appealed contending that the vendor had not terminated the contract as provided therein and that there was no evidence that the purchaser had refused to further perform the contract. The court on page 53 of 121 P.2d held:

"When a vendee has repudiated the contract and has refused to pay anything further upon it a vendor is entitled to take possession and proceed to clear his title and is no longer bound by the provisions of the contract. Woodard v. Hennegan, 128 Cal. 293, 60 P. 769. When it appears, as it does here, that a vendor was able and willing to comply with the contract and that the vendee was not able to do so and had declared that he intended to pay no more, the vendor may maintain a quiet title action. * * * Having repudiated the contract the vendees had no right to insist that the respondent proceed in accordance with the terms of the contract and the appellant, claiming under the vendees, is in no better position. The appellant contends that there is no evidence to sustain the finding that the defendants Chaffee refused to further perform the contract. While the evidence is conflicting in that regard it amply sustains the find-

ings made. The appellant particularly relies upon a letter written to Mr. Chaffee by the respondent's attorney on February 17, 1940, after possession had been taken by the respondent and a part of the orange crop harvested. The letter suggested a conference for the purpose of finding out if Mr. Chaffee would like to continue with the contract and if so what arrangements he could make for doing so. *At most, the letter was an offer which was never accepted* and it was far from sufficient to constitute a renewal of the contract which had previously been terminated. * * *" (Emphasis ours.)

Appellants argue that the filing of the suit on April 25, 1957 prevented them from making payments (thus hindering effective acceptance of appellees' new offer) and that from time to time thereafter appellants have made tender to the appellees. Yet, on the date that the action was filed a total of only $1,000 was on deposit with the Surety Title & Trust Company, and it was not until October 29, 1957 that an additional $2,500 was deposited by the Steffeys with that company as appears from the agreed statement of facts.

The earliest so-called tender was written by the appellants' attorney on October 28, 1957, the day before the additional deposit was made. Therein the appellants stated their willingness and ability to perform yet they demanded proof from the appellees that the Steffeys, with whom the appellants were dealing, had given a deed to the appellees covering the land in question and the appellants were still not willing to pay the appellees the amount called for under the agreement. There is no evidence that the appellants had the money at that time.

Under date of November 15, 1957 another purported tender was written by appellants, which tender no longer demanded proof of delivery of a deed from the Steffeys. These two tenders made almost six months after May 1, 1957 could hardly be said to come within the terms of appellees' offer of February 25, 1957.

We find no place in the record where appellants made timely acceptance of appellees' offer, i.e., they did not agree to take care of their present and past payments with their May 1st payment nor did they do so. Though the appellants considered appellees' letter of February 25th, 1957 an extension of time within which to pay, they did not pay. Certainly their telephone call of April 10th, 1957 to appellees concerning the potential sale to the Steffeys did not constitute an acceptance. If the filing of the action is what caused appellants not to tender the amount due, evidence showing when they discovered that the action was filed should have been introduced. The record is silent on this matter. In the absence of evidence showing that there was an acceptance of the appellees' new offer,

we must conclude that the abandonment by the appellants foreclosed any of their right, title, or interest to the property.

The judgment of the trial court is affirmed.

STRUCKMEYER, C. J., BERNSTEIN, V. C. J., and UDALL and LOCKWOOD, JJ., concur.