829 P.2d 1247

Jon BLUM; Richard Wirta; James Hamm; Brad Wilkinson; David Van Orden; David Skief, Plaintiffs–Appellees,

v.

The STATE of Arizona; Department of Corrections; Arizona Department of Corrections Director Samuel A. Lewis, His Designees in Authority and Successors in Office, Defendants–Appellants.

No. 1 CA–CV 91–121.

Court of Appeals of Arizona, Division 1, Department E.

April 16, 1992.

Grant Woods, Atty. Gen. by Ronald M. Andersen, Asst. Atty. Gen., Phoenix, for defendants-appellants.

Jon M. Blum, Richard S. Wirta, James J. Hamm, Brad Wilkinson, David Van Orden, David O. Skief, all in pro. per.

## OPINION

VOSS, Presiding Judge.

Appellants, State of Arizona, Arizona Department of Corrections ("ADOC"), and ADOC Director Samuel A. Lewis challenge the trial court's ruling that an ADOC policy regarding inmate property violates Ariz. Rev.Stat.Ann. ("A.R.S.") § 31–228(A) and is invalid and unenforceable as a matter of law. We agree with the trial court that the ADOC policy is contrary to this statute and we affirm.

## I. FACTS AND PROCEDURAL BACKGROUND

In 1988, Lewis issued Internal Management Policy ("IMP") 301.17 ("policy") on the subject of inmate personal property. The policy was effective on October 1, 1988. It set forth the types and quantities of personal items inmates were allowed to possess while incarcerated in ADOC facilities.

Under IMP 301.17, "contraband" includes any item of clothing or items for personal use not cleared through the property room, received through approved channels or purchased in an inmate commissary and any approved items in excess of the quantity allowed, as well as drugs, intoxicating liquor, weapons and other items ordinarily recognized as contraband in a prison. "Unauthorized property" is defined as items not inherently illegal that are considered contraband when possessed by an inmate.

The policy provides that an inmate is to be notified if any personal property in his or her possession or received while in prison is deemed to be unauthorized property. The inmate would then have 90 days in which to notify the property officer of the desired disposition of the unauthorized property. The disposition options would include having the property sent to a person outside the prison system, having an outside person pick up the property, or donating the property to a charity. The inmate would be responsible for all costs incurred in disposing of the property. If an inmate failed to designate a disposition of the unauthorized property, the property would be processed as unclaimed property [1] and disposed of pursuant to ADOC rules and regulations.

The new policy designated as unauthorized a major portion of the personal property then possessed by inmates and kept by them in their cells. ADOC maintained that the policy was necessary for security and

---

1. "Unclaimed property" is defined in IMP 301.17 as "[s]eized, found or recovered property items which have not been legally claimed and taken away by the owner within ninety days after being seized, found or recovered."

the safe and orderly operation of the prisons. Among the reasons for the policy, as explained by ADOC, were that excess property kept in a small cell area was a safety hazard in terms of fire and ventilation and was a security hazard because it blocked the view when security officers looked into cells and provided hiding places for dangerous contraband.

Appellees, who are inmates affected by the new policy, filed a complaint seeking injunctive and declaratory relief to prevent the implementation of IMP 301.17. In their first cause of action, the only portion of the complaint involved in this appeal, appellees alleged that the policy conflicted with, contradicted and violated A.R.S. § 31–228(A) which provides:

> When a prisoner is released on parole or discharged from a facility of the department of corrections there shall be returned to the prisoner everything of value taken upon commitment to the department of corrections, or thereafter received by the prisoner.

Appellees argued that they had in their possession property they had "received" while in prison that was approved by ADOC in accordance with ADOC policies then in effect. They contended that under A.R.S. § 31–228(A), the return of all property actually received could be accomplished only by allowing the inmate to keep the property in his or her possession until release or by ADOC storing the property until the inmate's release. Appellees maintained that no statute authorized ADOC instead to implement a policy to shift ownership from the inmate to the state after 90 days had passed. Claiming that they would suffer irreparable harm if ADOC was allowed to implement the policy and confiscate and dispose of their irreplaceable property, appellees asked the trial court

to enjoin implementation and declare the policy null and void.

Appellees subsequently moved for summary judgment on the first cause of action of their complaint. The trial court granted the motion for summary judgment, declaring that IMP 301.17 violated A.R.S. § 31–228(A) and was invalid. After finding that the meaning of § 31–228(A) was clear and unambiguous, the court noted in part that

> [s]ince the defendants are required to return to all prisoners *everything of value* taken upon commitment or thereafter received upon release or discharge, and the defendants have to a limited extent the authority to promulgate rules specifying property which may be in the possession of the prisoner, logically the defendants must store, protect and maintain possession of the prisoner's property in order to return it to the prisoner.

The court ordered appellants to comply with A.R.S. § 31–228(A) by storing and maintaining everything of value taken upon commitment of the appellees to ADOC or thereafter received by appellees and that all such property be returned to appellees upon their release on parole or discharge from ADOC.

Appellants in a motion for new trial and/or amended judgment argued that the judgment requiring storage of all inmate property received by the prison did not take into account the historical background, administrative interpretation, true spirit, purpose, effect and consequences of A.R.S. § 31–228(A).[2] The trial court denied the motion. Appellants appealed from the judgment on the first cause of action and from the denial of their motion for new trial.

## II. DISCUSSION

The parties do not dispute any of the material facts in this case. Because

---

2. Appellees did not respond to the merits of the motion for new trial but instead argued that appellants were not entitled to move for a new trial under Rule 59, Arizona Rules of Civil Procedure, because there were no rights of appellants materially affected by the judgment. The trial court found that the judgment materially affected the rights of appellants and overruled appellees' objections to the Rule 59 motion. Ap-

pellees argue on appeal that this court does not have jurisdiction to consider appellants' appeal from the denial of their motion for new trial based on the same basis they argued below. Because we agree with the trial court that appellants were entitled to file a motion for new trial, we have considered in this appeal the arguments raised by appellants in their motion for new trial.

the trial court decided the cause of action at issue as a matter of law, we review whether the court correctly applied the law and whether appellants were entitled to summary judgment as a matter of law. *Schroeder v. Hudgins,* 142 Ariz. 395, 397, 690 P.2d 114, 116 (App.1984). Particularly upon review of the trial court's interpretation of an Arizona statute, which involves legal rather than factual questions, this court is not bound by the trial court's conclusions of law; thus, we conduct a *de novo* review of the statute and regulation at issue. *Libra Group, Inc. v. State,* 167 Ariz. 176, 179, 805 P.2d 409, 412 (App. 1991).

On appeal, appellants argue that A.R.S. § 31–228(A) is a "non-confiscation" statute that prevents the state from confiscating the property of a prisoner and refusing to return the property upon the prisoner's release from the prison system. Based on this interpretation, appellants contend that the statute was not intended and cannot be construed to allow unlimited possession of property by inmates as appellants believe the trial court's order requires. Appellants read the judgment as making the prison system a warehouse for prisoner goods—a role, they argue, that creates an unreasonable burden on ADOC and its resources. Furthermore, appellants believe the judgment requires ADOC to accept everything that a prisoner takes to prison and to maintain whatever property the inmate arrives with or subsequently receives, thus restricting the authority of ADOC to regulate prisoner property.

Appellants also argue that nothing in the language of A.R.S. § 31–228(A) obliges ADOC to store and maintain everything an inmate takes to prison or receives during confinement nor does the statute restrict ADOC from returning property to an inmate prior to his or her release for disposal elsewhere. Their position is that IMP 301.17 is consistent with the statutory non-confiscation provision because ADOC would merely return property in excess of the new policy limits to inmates and allow the inmates to dispose of the unauthorized property as they choose.

Appellants further argue that the abandonment provision of the policy is proper because nothing in A.R.S. § 31–228(A) prevents property from being abandoned by prisoners during incarceration. According to appellants, the new policy simply requires inmates to choose between disposition and abandonment of property that ADOC has deemed unauthorized for prisoner possession.

In response, appellees state that they do not claim that they have a right to unlimited possession of property. They acknowledge that ADOC has the right to determine what amount of property inmates may have in their immediate possession. In their view, the trial court construed A.R.S. § 31–228(A) to preserve ADOC's right to determine which and how much property may be received by prisoners. Appellees contend that the court correctly interpreted A.R.S. § 31–228(A) as protecting certain property rights of prisoners during incarceration—rights that were violated by IMP 301.17.

Appellees argue that despite appellants' claim that A.R.S. § 31–228(A) is an anti-confiscation provision, IMP 301.17 effectively works the confiscation of inmate property by allowing ADOC to unilaterally declare property to be unauthorized and subsequently abandoned or unclaimed so that ADOC can dispose of it. They believe that the policy results in the confiscation or forfeiture of inmate property because the property must be disposed of at the inmate's expense and because if the prisoner does not have anyone outside the prison to whom the property can be sent, the property is declared to be abandoned or unclaimed. Such a forfeiture, they argue, would violate A.R.S. § 13–904(D), which forbids the state to work a forfeiture of a convicted person's property unless expressly imposed by law.[3]

---

**3.** A.R.S. § 13–904(D) reads: "The conviction of a person for any offense shall not work forfeiture of any property, except if a forfeiture is expressly imposed by law. All forfeitures to the state, unless expressly imposed by law, are abolished."

Appellees also point out that ADOC's previous practice of storing items for inmates indicates that its interpretation of A.R.S. § 31–228(A) was that it was required to store inmate property. They contend that despite ADOC's position that the policy is necessary for safety and security reasons, all security and order concerns could be fully met by removal of property from the cells and thus permanent divestment of ownership is not reasonably related to any legitimate penological interest.

The statute at issue, A.R.S. § 31–228(A), has not yet been judicially interpreted. There is little legislative history except for notations of changes to the statute, changes primarily in another section of A.R.S. § 31–228 that provides for an amount of money to be given to prisoners upon their release.

■ The primary rule of statutory interpretation is to ascertain and give effect to the intent of the legislature. *Wyatt v. Wehmueller*, 167 Ariz. 281, 284, 806 P.2d 870, 873 (1991). The court should look first to the words of the statute but if they do not disclose legislative intent, the court must examine the statute as a whole, giving effect to all of its provisions. *Id.* To determine legislative intent the court may also consider such factors as the context of the statute, the subject matter, historical background, its effects and consequences, and its spirit and purpose. *Id.*

■ Where the statute impacts an administrative function, the administrative interpretation should be accorded some weight in construing the statute, although such interpretation is not binding on the court. *Walter O. Boswell Memorial Hospital, Inc. v. Yavapai County*, 148 Ariz. 385, 389, 714 P.2d 878, 882 (App.1986). Furthermore, a statute cannot be changed by administrative regulations. *Id.* at 390, 714 P.2d at 883.

■ We agree with the trial court to the extent that it concluded that IMP 301.17 violates the provisions of A.R.S. § 31–228(A), which requires ADOC to return to prisoners, upon their release on parole or discharge, everything of value taken upon commitment or thereafter received by inmates. The statute uses the terms "shall be returned." The use of the word "shall" indicates that the legislature intended the provision to be mandatory. *Insurance Co. of North America v. Superior Court of Santa Cruz County*, 166 Ariz. 82, 85, 800 P.2d 585, 588 (1990). Thus, on its face, the statute means that everything of value taken upon commitment to ADOC or subsequently received by a prisoner must be returned upon release from ADOC custody.

The policy conflicts with this statute in a number of ways. ADOC cannot return property to an inmate upon release if it has previously required the inmate to dispose of the property by sending it outside the prison system. Furthermore, although appellants argue that A.R.S. § 31–228(A) is meant to be a non-confiscation statute, in application IMP 301.17 works as a confiscation of the property of those inmates who do not have anyone outside the prison to whom they can entrust their property. Documents in the record indicate that even if a prisoner attests that he or she does not have a friend or family member who will store the property until the prisoner's release, ADOC takes the position that if the prisoner has had any visitors or personal correspondence, he or she does have persons to whom property can be released and must designate a person or suffer the consequences of abandonment of the property. Thus, an inmate who has no one to accept the property must either dispose of it by sending it to a charity or lose it when the property is deemed by ADOC to be unclaimed or abandoned.

This scheme essentially causes a forfeiture of the property at the behest of ADOC. Appellants argue that because inmates have the opportunity to dispose of their own property, if they refuse to do so the result is abandonment, not forfeiture. We disagree with this contention due to the situations in which an inmate has no means of disposing of the property that will safeguard it until his or her release. ADOC's position that anyone who visits or corresponds with a prisoner is able to receive and store the prisoner's property is a fiction. The mere fact that a person visits or

corresponds with a prisoner is no indication that the person is trustworthy to maintain and store the property until the prisoner is released from ADOC confinement in the same manner required of ADOC by A.R.S. § 31–228(A).

Abandonment is "the act of intentionally and voluntarily relinquishing a known right absolutely and without reference to any particular person or purpose." *Mason v. Hasso*, 90 Ariz. 126, 129, 367 P.2d 1, 4 (1961). A forfeiture, on the other hand, "is enforced and involuntary and occurs without regard to intention." *Id.* To say that a prisoner abandons previously authorized and accepted property when he or she is unable to dispose of it in compliance with ADOC regulations ignores the requirement that an abandonment be an intentional act of voluntary relinquishment. Rather, such an enforced and involuntary relinquishment of property is a forfeiture which violates the non-confiscation intent of A.R.S. § 31–228(A) as well as the clear prohibition against forfeitures found in A.R.S. § 13–904(D).

We disagree with appellant's contention that the trial court's order seemingly requires ADOC to accept everything that a prisoner brings with him or her into the prison. We do not believe the trial court included this prohibition in its conclusions when it stated:

> [t]he defendants acknowledge that they have previously permitted the prisoners to accept delivery of items from the outside. . . . The delivery of those "television sets, stereos, electric typewriters, hair dryers, electric tooth brushes, designer clothing and boxes and boxes of paper" to the plaintiffs from the outside was permitted by the defendants. . . . The initial error of the defendants, if any error was committed, was to permit the receipt of those items of "television sets, stereos, . . . ."

In this statement, it appears to us that the trial court was acknowledging that ADOC has the right to permit or exclude from the prison system personal items belonging to inmates, not that ADOC must accept every-

thing that a prisoner brings or receives at the prison.

Appellants assert that they have no control over the items a prisoner takes to prison. However, they give no authority to support this position. Their only reference is to an affidavit attached to their motion for new trial and/or amended judgment. The affidavit, however, cites no statute or rule that would prevent ADOC from specifying the types and quantities of items that may be accepted with the prisoner into the ADOC facility or subsequently received. In fact, the affidavit contains the statement that "[i]tems presently rejected from entry into the system are not inventoried or searched," thus implying that ADOC does refuse to allow certain prisoner property into the prison system. Furthermore, ADOC policy no. 420(5), which was superseded by IMP 301.17, provided:

> Upon arrival at any institution, property that is not illegal contraband but is not allowed in the inmate's personal possession will be packaged and sealed in the inmate's presence and: (a) sent to the person designated by the inmate at the inmate's expense; . . . (b) otherwise disposed of, as authorized by the Chief Executive Officer if the inmate fails to designate disposition.

Thus, it appears that ADOC has had policies, which apparently were unchallenged judicially, that allowed it to refuse to take inmate property into the prison system. The parties have not referred us to, nor have we found, any statutory prohibition against ADOC's promulgation of policies to prevent entry of unauthorized prisoner property into ADOC institutions. We believe this is because ADOC has absolute authority to restrict what comes into the prison.

We further believe that nothing in A.R.S. § 31–228(A) prohibits ADOC from refusing to take prisoner property upon initial commitment or refusing to allow receipt of items subsequently sent to prisoners. The phrase "everything of value taken upon commitment" in the statute could be interpreted to mean that ADOC must receive and store *everything* initially "taken" to the prison by an inmate. However, we do

not believe that is the intent of the legislature. Clearly, the legislature would not expect ADOC to receive and store for eventual return to a prisoner such contraband as drugs and weapons. Thus, we conclude that the word "taken" refers to ADOC's act of taking authorized property of the inmate into the prison system either as property that the inmate may possess in his or her cell or to be stored by ADOC.

Finally, appellants argue that prisoners' rights are subject to limitations and restrictions and that the ADOC director has the authority to promulgate regulations to address prison safety and security concerns. While we agree that this is a correct statement of the law, we do not reach its application as an issue in this case because of our conclusion that IMP 301.17 violates the express provisions of A.R.S. § 31–228(A). Moreover, as pointed out by appellees, ADOC can fully satisfy its security and order concerns by removal of property from the cells; it is not necessary or reasonable to permanently divest inmates of ownership of their property in order to meet these concerns.

### III. CONCLUSION

In summary, we hold that IMP 301.17 violates A.R.S. § 31–228(A) insofar as it requires inmates to dispose of property previously accepted into the prison system as authorized property. However, ADOC may adopt policies limiting the amount of property prisoners may keep in their cells but any such items disallowed from immediate possession, which were previously authorized, must be stored and maintained pending a prisoner's release pursuant to A.R.S. § 31–228(A). Nothing in § 31–228(A), however, prevents ADOC from adopting policies to prohibit, in the future, the acceptance of inmate property into the ADOC system either at initial commitment or subsequently. To the extent that the ruling of the trial court is consistent with our holding, we affirm.

CLABORNE and EUBANK, JJ., concur.