FILED
COURT OF APPEALS
DIVISION II

2014 JUN 24 AM 9: 02

STATE OF WASHINGTON
BY_____
DEPUTY

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

|  |  |
|---|---|
| SHAWN GREENHALGH and JAMES PFAFF, on behalf of themselves and all others similarly situated, | No. 44222-1-II |
| Appellants, | |
| v. | |
| DEPARTMENT OF CORRECTIONS, ELDON VAIL, and the STATE OF WASHINGTON, | ORDER AMENDING OPINION AND DENYING MOTION FOR RECONSIDERATION |
| Respondents. | |

The published opinion previously filed in this case on April 29, 2014, is hereby amended as follows:

The following sentence in the first paragraph on page 8 is deleted: "Greenhalgh and Pfaff agree that their property was contraband after January 1, 2010."

In all other respects the motion for reconsideration is denied.

**IT IS SO ORDERED.**

DATED this 24TH day of JUNE , 2014.

JOHANSON, C.J.

We concur:

WORSWICK, J.

LEE, J.

FILED
COURT OF APPEALS
DIVISION II

2014 APR 29 AM 8:38

STATE OF WASHINGTON

BY_____
      DEPUTY

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| SHAWN GREENHALGH and JAMES PFAFF, on behalf of themselves and all others similarly situated, | No. 44222-1-II |
| Appellants, | |
| v. | |
| DEPARTMENT OF CORRECTIONS, ELDON VAIL, and the STATE OF WASHINGTON, | PUBLISHED OPINION |
| Respondents. | |

JOHANSON, J. — Shawn Greenhalgh and James Pfaff appeal the superior court's summary dismissal of their claims against the Department of Corrections (DOC). Greenhalgh and Pfaff argue that (1) RCW 72.02.045(3) and WAC 137-36-060 require DOC to store their previously authorized property until their release; (2) DOC's revised policy 440.000 (DOC 440.000) constitutes impermissible and unconstitutional forfeiture under RCW 9.92.110 and Wash. Const., art. I, § 15; and (3) DOC violated state and federal due process when it deprived them of their previously authorized property.

We hold that the superior court did not err in dismissing Greenhalgh and Pfaff's claims because the State is entitled to judgment as a matter of law. There is no statutory requirement that DOC store all inmate property, Greenhalgh and Pfaff were not subject to illegal forfeiture of

their property, and DOC gave them adequate due process. Therefore, we affirm the superior court's summary judgment order.

## FACTS

In January 2009, DOC informed its inmates that it amended DOC 440.000 to eliminate inmate possession of excess or unauthorized personal clothing items by January 2010. Inmates had the following disposition options: (1) between July 1, 2009 and September 30, 2009, inmates could send out the clothing at DOC's expense[1]; (2) through December 31, 2009, inmates could give the clothing to a visitor; or (3) after December 31, 2009, inmates had 30 days to dispose of excess or unauthorized clothing. If an inmate was indigent, refused to pay postage, or failed to designate someone to receive the clothing, DOC donated or destroyed it. After January 1, 2010, all unauthorized personal clothing became contraband.

In March 2009, Greenhalgh filed a grievance and requested a revision of the policy to allow him to keep the unauthorized property or to require DOC to store his clothing until his release from custody. DOC denied Greenhalgh's requested relief. In April 2010, Greenhalgh sent his unauthorized personal clothing to Scott Frakes, Superintendent of the Monroe Correctional Complex, with a request that Frakes keep the clothing until Greenhalgh's release from custody. Frakes denied Greenhalgh's request. Although Greenhalgh claimed that he had no one to ship his personal clothing to, he had previously shipped property to other people.

In January 2011, Pfaff received notification from McNeil Island Corrections Center (MICC) that MICC would destroy one box of his personal clothing in 30 days unless he paid to

---

[1] Per WAC 137-36-040 and RCW 72.02.045(3), after DOC's offer to pay shipping costs expired on September 30, 2009, the inmate could pay to have the clothing shipped to nonincarcerated third parties at their own expense.

ship it to a third party. Pfaff, claiming indigence, directed MICC to dispose of the property. Pfaff's spending account records show that within the 30-day window, he had funds to cover the postage.

Greenhalgh and Pfaff filed a class action suit alleging that DOC 440.000 violated RCW 72.02.045(3), RCW 9.92.110, WAC 137-36-060, Wash. Const. art. I, §§ 3 and 15, and U.S. Const. amend. XIV. Greenhalgh and Pfaff contend that RCW 72.02.045(3) and WAC 137-36-060 required DOC to store the clothing inmates obtained before January 2010, and that DOC 440.000 constituted impermissible and unconstitutional forfeiture under RCW 9.92.110 and Wash. Const. art. I, § 15. Additionally, Greenhalgh and Pfaff claimed the enforcement of DOC 440.000 deprived inmates of due process.

DOC filed a summary judgment motion to dismiss. The superior court granted DOC's motion, dismissing all of Greenhalgh and Pfaff's claims. Greenhalgh and Pfaff now appeal.

ANALYSIS

SUMMARY JUDGMENT

We review summary judgment de novo, considering all the facts in the light most favorable to the nonmoving party. *TransAlta Centralia Generation LLC v. Sicklesteel Cranes, Inc.*, 134 Wn. App. 819, 825, 142 P.3d 209 (2006), *review denied*, 161 Wn.2d 1013 (2007). We affirm summary judgment if the pleadings and supporting documents demonstrate that there are no genuine issues of material fact and that the moving party is entitled to judgment as a matter of law. CR 56(c). When we review a grant of summary judgment, we consider only the issues and evidence presented to the superior court. RAP 9.12.

No. 44222-1-II

I. STATUTORY CONSTRUCTION

First, Greenhalgh and Pfaff argue that the superior court incorrectly interpreted the term "custodian" in RCW 72.02.045(3),[2] and that RCW 72.02.045(3) and WAC 137-36-060 require DOC to store the excess personal clothing inmates possessed before January 2010 and to return the property upon an inmate's release. We hold that RCW 72.02.045(3) and WAC 137-36-060 do not require DOC to store *all* of an inmate's property including previously authorized contraband.

A. STANDARD OF REVIEW AND RULES OF LAW

We review statutory interpretation de novo. *Dep't of Ecology v. Campbell & Gwynn, LLC*, 146 Wn.2d 1, 9, 43 P.3d 4 (2002). Our duty is to carry out the legislature's intent and if the statute's meaning is plain on its face, that plain meaning is an expression of legislative intent. *Campbell*, 146 Wn.2d at 9-10. We cannot add words to an unambiguous statute when the legislature has not included that language. *Durland v. San Juan County*, 174 Wn. App. 1, 23, 298 P.3d 757 (2012).

B. PLAIN MEANING

We discern the plain meaning of a statute from all that the legislature has said in the statute and its related statutes that disclose legislative intent about the provision in question. *Jametsky v. Rodney A.*, __ Wn.2d __, 317 P.3d 1003, 1006 (2014). We consider the natural and contextual meanings that attach to a term, giving words their usual, ordinary, and commonly

---

[2] Neither party argues that RCW 72.02.045(3) is ambiguous in its meaning. Greenhalgh and Pfaff explicitly assert that RCW 72.02.045(3) is unambiguous. DOC argues that the superior court's plain language interpretation of RCW 72.02.045(3) is correct. Because we agree with the parties that the plain language of RCW 72.02.045(3) controls, we rely solely on the plain language arguments presented in the parties' briefing.

4

accepted meaning, and we may look to a dictionary for an undefined term's ordinary meaning. *State v. Ratliff*, 140 Wn. App. 12, 16, 164 P.3d 516 (2007); *Bremerton Pub. Safety Ass'n v. City of Bremerton*, 104 Wn. App. 226, 230-31, 15 P.3d 688 (2001).

RCW 72.01.050(2) gives the secretary of corrections, and DOC, a broad grant of power to manage and govern correctional facilities; only other laws that govern correctional facilities limit that power. DOC superintendents may make, amend, and repeal rules for the administration and safety of his/her institution. RCW 72.02.045(4). The superintendent has the authority to "determine the types and amounts of property" an inmate may have. RCW 72.02.045(3). Any property an inmate may not have is contraband, and authorized property that is above the allowed amounts is contraband and is disposed of either by the inmate at their own expense or by DOC. *See* RCW 72.09.015(5); RCW 72.02.045(3); RCW 63.42.020(3); WAC 137-36-020(1), -030(4), -040; WAC 137-48-020(1).

> RCW 72.02.045(3) states that the superintendent
>
> shall be the custodian of all funds and valuable personal property of convicted persons [in their possession on arrival, sent to or earned by the inmate while in custody, or forwarded to the superintendent on behalf of the inmate]. [A]ll funds and valuable personal property in the possession of the superintendent belonging to such convicted persons shall be delivered to them.

And WAC 137-36-060 states, "[Upon release], all personal property in the custody of the superintendent shall be returned to the inmate."

Ch. 72.02 RCW does not include a definitions section, and WAC 137-36-020 does not define "custody." We determine the plain meanings behind RCW 72.02.045(3) and WAC 137-36-060 by looking to definitions of words and related statutes. *See Campbell*, 146 Wn.2d at 11. *Black's Law Dictionary* defines "custodian" as "[a] person or institution that has charge or custody (of a child, property, papers, or other valuables)." BLACK'S LAW DICTIONARY 441 (9th

ed. 2009). And "custody" means "[t]he care and control of a thing or person for inspection, preservation, or security." BLACK'S, *supra*, 441.[3] By emphasizing the word "preservation" in the definition of custody, Greenhalgh and Pfaff seemingly ignore the "or" included in the purposes stated for "care and control." As read in the definition of custody, "preservation" of Greenhalgh's and Pfaff's property is not a requirement, but an option.

To support their argument that DOC is required to store their excess personal clothing, Greenhalgh and Pfaff rely on our Supreme Court's holding in *Burton v. Lehman*, 153 Wn.2d 416, 426, 103 P.3d 1230 (2005) (stating that the meanings of "transfer" and "deliver" in RCW 72.02.045(3) required DOC to ship inmate property to their new institution).[4] Unlike *Burton*, where the statute clearly required DOC's action to transfer and deliver personal property, here the definition of "custodian" does not require DOC to "preserve or store" Greenhalgh's and Pfaff's contraband, even if previously authorized.

Greenhalgh and Pfaff concede that their interpretation of RCW 72.02.045(3) does not require storage of contraband, but they argue that DOC should not treat *previously authorized property* the same as other contraband. To support their interpretation of RCW 72.02.045(3), Greenhalgh and Pfaff rely on *Blum v. Arizona*, 171 Ariz. 201, 829 P.2d 1247 (1992). In *Blum*,

---

[3] Greenhalgh and Pfaff go beyond the definitions of "custody" and "custodian" to define words not included in either RCW 72.02.045 or WAC 137-36-060. Because we cannot add words or clauses to a statute that the legislature did not include, engaging in such an exercise goes beyond the plain meaning of the statute. *See Yousoufian v. Office of Ron Sims*, 152 Wn.2d 421, 437, 98 P.3d 463 (2004).

[4] *Burton* involved authorized property that DOC was required to ship when it transferred an inmate to another facility, and DOC's policy forced inmates to choose between paying for their property to be shipped to the new facility or losing their ownership. The Supreme Court held that the plain meaning of RCW 72.02.045 prohibited DOC from forcing inmates to make that choice. *Burton*, 153 Wn.2d at 426-27.

the Arizona Court of Appeals held that disposal of contraband violated former Ariz. Rev. Stat. Ann. § 31-228(A) (1987).[5] 171 Ariz. at 205. The previously authorized contraband in *Blum* constituted a large portion of the property inmates held in their cells. *Blum*, 171 Ariz. at 202. The *Blum* court held that former Ariz. Rev. Stat. Ann. § 31-228(A) was clear in its intent that all property, authorized and unauthorized, was to be stored and returned to the inmate upon release. 171 Ariz. at 207.

Greenhalgh and Pfaff argue that the Arizona statute in *Blum* is identical to RCW 72.02.045(3). We disagree.

The statute in *Blum* clearly requires the Arizona department of corrections to store and return everything of value to the inmates upon release. 171 Ariz. at 205. In contrast, RCW 72.02.045(3) requires DOC to return only the "property in possession of the superintendent" to the inmate upon release. *Compare* former ARIZ. REV. STAT. ANN. § 31-228(A), *and* RCW 72.02.045(3). The *Blum* court read "everything of value" to include contraband and other unauthorized property. *See Blum*, 171 Ariz. at 205-06. But we do not read RCW 72.02.045(3) to include, nor is there any legislative indication of, a duty to store contraband. Instead, the statutes and regulations related to RCW 72.02.045(3) state that contraband is either sent out at the inmate's expense or disposed of by DOC. Therefore, *Blum* is not persuasive. Additionally, Greenhalgh and Pfaff read WAC 137-36-060 out of context with the rest of the provisions in the same section, most importantly WAC 137-36-020(1), -030, and -040(1)(a).

_____

[5] Former Ariz. Rev. Stat. Ann. § 31-228(A) states, "When a prisoner is released on parole or discharged from a facility of the department of corrections there *shall be returned to the prisoner everything of value* taken upon commitment to the department of corrections, or thereafter received by the prisoner." (Emphasis added.)

As a "custodian" of inmate property, DOC is in charge of inmate property and has the authority to make rules and regulations regarding inmate property. *See, e.g.,* RCW 72.02.045(3); RCW 72.01.050(2); BLACK'S, *supra,* 441. DOC determined that personal clothing beyond the prescribed list would become contraband on January 1, 2010. Greenhalgh and Pfaff agree that their property was contraband after January 1, 2010. Although it was previously authorized property, it became contraband and subject to the disposal process in WAC 137-36-040(1)(a), when it became "excess" property under WAC 137-36-030(4). Because the property was contraband, DOC had the authority to require Greenhalgh and Pfaff to either pay to ship their property out or to dispose of it. *See* RCW 72.09.015(5); RCW 63.42.020(3); RCW 72.02.045(3); WAC 137-36-020(1), -040(1)(a), -030(4); WAC 137-48-020(1).

We hold that as a "custodian," DOC is in charge of the care and control of authorized property within DOC's possession. RCW 72.02.045(3) does not create a statutory duty that DOC store *all* of Greenhalgh's and Pfaff's property, including property previously authorized but now deemed contraband. Accordingly, the superior court did not err when it determined that DOC had no duty to store unauthorized property.

Greenhalgh and Pfaff's arguments also fail because (1) WAC 137-36-060 does not require the superintendent to store contraband property; (2) Greenhalgh's and Pfaff's property was contraband when it was disposed; and (3) when read in conjunction with the other provisions in the section, WAC 137-36-060 authorizes disposal of contraband.

## II REMAINING CLAIMS

Greenhalgh and Pfaff assert that the superior court erred in granting summary dismissal because the superior court failed to discuss Greenhalgh and Pfaff's remaining claims. While the

8

superior court does not need to state its reasoning in an order granting summary judgment,[6] we review all matters in summary judgment de novo[7] and address all of Greenhalgh and Pfaff's arguments made in the superior court.

### A. Forfeiture Claims (RCW 9.92.110, Wash. Const. Art. I, § 15)

Greenhalgh and Pfaff allege that the enforcement of DOC 440.000 was impermissible and an unconstitutional forfeiture. We hold that the enforcement of DOC 440.000 was not an impermissible or an unconstitutional forfeiture and that the loss of the property resulted from Greenhalgh's and Pfaff's incarceration, not their convictions.

No conviction shall work corruption of blood, nor forfeiture of estate. Wash. Const. art. I, § 15. A conviction of crime shall not work forfeiture of any property, real or personal, or of any right or interest therein. RCW 9.92.110. Wash. Const. art. I, § 15 only prohibits forfeiture of a convict's estate on the ground that he or she is prohibited from owning property due to a conviction. *State v. Young*, 63 Wn. App. 324, 328-29, 818 P.2d 1375 (1991). Wash. Const. art. I, § 15 does not prohibit forfeiture for rational and legitimate purposes. *Young*, 63 Wn. App. at 329 (citing *State v. Barr*, 99 Wn.2d 75, 77, 658 P.2d 1247 (1983); *Crape v. Mount*, 32 Wn. App. 567, 648 P.2d 481, *review denied*, 98 Wn.2d 1008 (1982)). And there is no violation of RCW 9.92.110 when DOC seizes property because of a person's confinement following a conviction and not because of the person's underlying conviction. *Willoughby v. Dep't of Labor & Indus.*, 147 Wn.2d 725, 732, 57 P.3d 611 (2002).

---

[6] *See Skimming v. Boxer*, 119 Wn. App. 748, 755, 82 P.3d 707 (citing *Chelan County Deputy Sheriff's Ass'n v. County of Chelan*, 109 Wn.2d 282, 294 n.6, 745 P.2d 1 (1987)), *review denied*, 152 Wn.2d 1016 (2004).

[7] *Folsom v. Burger King*, 135 Wn.2d 658, 663, 958 P.2d 301 (1998).

DOC confined Greenhalgh and Pfaff because of their criminal convictions; however, DOC disposed of their personal clothing because of their confinement in DOC institutions, not because of their underlying convictions. DOC has a legitimate purpose delegated to them under RCW 72.01.050 to ensure the safety and efficiency of their institutions. And DOC has the power to promulgate policies to make their institutions efficient and safe; DOC 440.000 was such a policy. DOC applied the same property policy to all Washington State inmates because of their incarceration and not because of their underlying convictions. Because there is no violation of RCW 9.92.110 where property is seized because a person is confined following a conviction, and because institutional efficiency and safety are legitimate purposes for which to regulate inmate property, Greenhalgh and Pfaff's arguments under Wash. Const. art. I, § 15 and RCW 9.92.110 fail.

## B. FEDERAL AND STATE DUE PROCESS

Next, Greenhalgh and Pfaff argue that DOC, Washington State, and DOC Secretary Eldon Vail violated their procedural and substantive due process rights under U.S. Const. amend XIV, Wash. Const. art. I, § 3, and 42 U.S.C. § 1983. We hold that the notice and process given to Greenhalgh and Pfaff satisfied procedural due process requirements.

### 1. PROCEDURAL DUE PROCESS

Greenhalgh and Pfaff claim that DOC neither provided them notice that they would lose their property nor gave them the opportunity for a hearing. We hold that DOC gave Greenhalgh and Pfaff ample notice of the new rules for personal property, that DOC gave them opportunities to send out or give their personal clothing to a third-party, and that the notice and procedures established by DOC satisfied due process requirements.

The federal constitution protects individuals against the deprivation of liberty or property without due process of law. U.S. CONST. amend. XIV. Washington's constitutional provision[8] is similar and does not provide broader protections than its federal counterpart. WASH. CONST. art. I, § 3; *In re Pers. Restraint of Matteson*, 142 Wn.2d 298, 310, 12 P.3d 585 (2000). A threshold matter to a procedural or substantive due process claim is whether the plaintiff possessed a property interest. *See Portman v. County of Santa Clara*, 995 F.2d 898, 904 (9th Cir. 1993). An inmate's ownership of property is a protected property interest and may not be infringed upon without due process; however, there is a difference between the right to own property and the right to possess property while in prison. *Searcy v. Simmons*, 299 F.3d 1220, 1229 (10th Cir. 2002).

To state a procedural due process claim, a plaintiff must allege (1) a liberty or property interest protected by the constitution, (2) a deprivation of the interest by the government, and (3) a lack of process. *Wright v. Riveland*, 219 F.3d 905, 913 (9th Cir. 2000) (quoting *Portman*, 995 F.2d at 904). We balance the following factors when determining the timing and nature of a hearing due plaintiff: (1) the private interest affected by the official action; (2) the risk of an erroneous deprivation through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and (3) the government's interest, including function involved and fiscal and administrative burdens that additional or substitute procedural requirement would entail. *Wright*, 219 F.3d at 913 n.6 (quoting *Mathews v. Eldridge*, 424 U.S. 319, 335, 96 S. Ct. 893, 47 L. Ed. 2d 18 (1976)).

---

[8] "No person shall be deprived of life, liberty, or property, without due process of law." WASH. CONST. art. I, § 3.

11

Greenhalgh and Pfaff have established that (1) they had a protected property interest in their personal clothing and (2) DOC deprived them of their personal clothing when it amended and enforced DOC 440.000. But Greenhalgh and Pfaff fail to prove that DOC did not provide them due process.

Greenhalgh and Pfaff argue that DOC did not advise them of their right to a hearing and that DOC gave them insufficient notice. We disagree. DOC gave them at least three notices: (1) the January 2009 memorandum to all inmates about the policy change, (2) the March 2009 implementation plan sent to all inmates, and (3) the January 2011 MICC letter to Pfaff. In addition, Greenhalgh filed grievances with DOC in March 2009, stating that the deprivation of his property was unfair. DOC provided sufficient notice.

When we balance the factors outlined in *Wright*, the notice given to the inmates combined with the inmate grievance process was sufficient to afford due process. While DOC's policy affected Greenhalgh's and Pfaff's property possession interests, there was no risk of erroneous deprivation because Greenhalgh and Pfaff could direct where their property went or whether it was disposed of. DOC notified Greenhalgh and Pfaff 12 months in advance of the effective date of the policy change, and the March 2009 implementation plan notified them of several methods to retain ownership of their property. Greenhalgh filed his grievance in early 2009 and DOC told him that he could not keep his personal clothing. Although he could have directed that MICC treat his property differently, Pfaff directed them to dispose of his clothing, choosing to not send it out of the institution. Finally, Greenhalgh and Pfaff chose not to act and lost ownership of their property only after failing to engage in the process DOC provided for them. Because Greenhalgh and Pfaff were provided a notice and grievance process, we hold that DOC 440.000 did not violate their procedural due process rights.

## 2. SUBSTANTIVE DUE PROCESS

Next, Greenhalgh and Pfaff allege that DOC 440.000 is irrational and violated substantive due process. We hold that DOC may change its policies, that DOC 440.000 achieves a legitimate purpose, and that it is neither irrational nor unduly burdensome.

We apply the following three-prong test when subjecting a policy to substantive due process analysis: (1) whether the policy aims to achieve a legitimate public purpose, (2) whether the means adopted are reasonably necessary to achieve the purpose, and (3) whether the policy is unduly oppressive. *Robinson v. City of Seattle*, 119 Wn.2d 34, 51-52, 830 P.2d 318 (quoting *Presbytery of Seattle v. King County*, 114 Wn.2d 320, 330-31, 787 P.2d 907, *cert. denied*, 498 U.S. 911 (1990)), *cert. denied*, 506 U.S. 1028 (1992). Our inquiry into the "unduly oppressive" prong balances the public's interest against that of the property owner and considers (1) the nature of the harm sought to avoid, (2) the availability and effectiveness of less drastic measures, (3) the economic loss suffered by the property owner, and (4) the extent to which the property owner should have anticipated the outcome from such regulation. *Robinson*, 119 Wn.2d at 51 (stating that the first and second prongs of the analysis are often easily met).

DOC's policy achieved fiscal efficiency and reduction of taxpayer burdens, both legitimate public purposes, and was reasonable to address DOC's budgetary goals.[9] Finally, the public interests DOC sought to achieve with DOC 440.000 outweighed Greenhalgh's and Pfaff's interest in having excess or unauthorized personal clothing. Moreover, it was foreseeable that the property would have to be shipped out or would be disposed of after January 2010.

---

[9] The January 2009 memorandum stated that DOC considered many cost-cutting measures, including elimination of personal radios, televisions, and musical instruments, but stated that the elimination of personal clothing had much more impact, reducing water, electricity, maintenance, and sewage consumption.

13

DOC minimized the burden on inmates by incurring the cost of sending out the inmates' clothing during a period of time and providing 12 months notice before DOC enforced the changes. Finally, Greenhalgh's and Pfaff's economic loss was de minimis[10] compared to DOC's conservative fiscal savings estimates.[11] Thus, the public interests served by DOC 440.000 outweigh Greenhalgh's and Pfaff's interests in their personal clothing. Accordingly, Greenhalgh's and Pfaff's substantive due process claims fail because they fail to prove that DOC's legitimate purpose in amending and enforcing DOC 440.000 is irrational and unduly burdensome.

### 3. 42 U.S.C. § 1983

Greenhalgh and Pfaff also allege that they are entitled to relief for the alleged due process violations under 42 U.S.C. § 1983. We hold that Greenhalgh and Pfaff are not entitled to relief under 42 U.S.C. § 1983 because their due process rights were not violated.

To state a § 1983 claim, a citizen must show that (1) a person acting under color or state law has (2) violated a federally protected right. *Snohomish County v. Anderson*, 124 Wn.2d 834, 843, 881 P.2d 240 (1994) (quoting 42 U.S.C. § 1983). Section 1983 does not create any substantive rights, but only a remedy when a government official or employee violates federally guaranteed rights. *Chapman v. Houston Welfare Rights Org.*, 441 U.S. 600, 617, 99 S. Ct. 1905, 60 L. Ed. 2d 508 (1979).

---

[10] Greenhalgh claimed damages of $10.52 in shipping costs, and Pfaff claimed $255.00 in lost property.

[11] DOC conservatively estimated that eliminating personal clothing saved $100,000 annually in addition to reducing water, laundry, and sewage consumption, and reducing man hours required to record, track, and ship inmate personal clothing.

No. 44222-1-II

Because Greenhalgh and Pfaff's underlying procedural and substantive due process claims fail, we hold that they are not entitled to relief under 42 U.S.C. § 1983.

After reviewing all of the claims Greenhalgh and Pfaff brought to the superior court's attention, we hold that the State was entitled to judgment as a matter of law. Accordingly, summary judgment was proper.

We affirm.

JOHANSON, J.

We concur:

WORSWICK, C.J.

LEE, J.

15