
# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 75536-6-I |
| | ) | |
| Respondent, | ) | DIVISION ONE |
| | ) | |
| v. | ) | |
| | ) | |
| THOMAS ALLEN CHRISTIAN, | ) | PUBLISHED |
| | ) | |
| Appellant. | ) | FILED: <u>October 16, 2017</u> |
| | ) | |

Cox, J. — Thomas Christian appeals his convictions for two counts of second degree identity theft. Because the evidence is sufficient to prove that he twice "used" a stolen debit card at a retail store, we affirm his convictions. The State properly concedes that the trial court's imposition of a $125.00 jury demand fee as a cost was incorrect. Thus, we reverse the imposition of that cost and remand with directions for the trial court to strike it.

The material facts are undisputed. Christian went to a Burlington Coat Factory retail store with a stolen debit card issued by U.S. Bank. According to bank records and testimony from a loss prevention officer of the store, Christian presented the stolen debit card to the store three times, in close succession. The bank authorized the first transaction for a $109.06 purchase. A second purchase for $213.39, which Christian attempted six minutes later, was declined by the

bank. The bank also declined a third purchase for $113.39, which Christian attempted one minute later. It is also undisputed that the owner of the debit card did not authorize Christian to have it.

The State charged Christian with two counts of theft, based on unrelated activities. It also charged him with four counts of identity theft. The trial court dismissed one count of theft and one count of identity theft.

After a bench trial, the trial court convicted Christian of one count of second degree theft and three counts of second degree identity theft. The trial court imposed an exceptional sentence of 60 months on the identity theft convictions and 29 months on the theft in the second degree count. The court also imposed a jury demand fee of $125.00 as a cost.

Christian appeals.

## SUFFICIENCY OF THE EVIDENCE

Christian primarily argues on appeal that there is insufficient evidence to support his convictions for two of the three counts of second degree identify theft. He claims that the evidence is insufficient because two of these transactions were not completed---the bank declined both. According to him, this means that he could only be convicted of attempted identify theft, not the completed crime. Because this argument is based on a flawed reading of the identity theft statute, we disagree.

2

Due process requires the State to prove, beyond a reasonable doubt, every element of the crime charged.[1] "A sufficiency challenge admits the truth of the State's evidence and accepts the reasonable inferences to be made from it."[2] "We will reverse a conviction 'only where no rational trier of fact could find that all elements of the crime were proved beyond a reasonable doubt.'"[3]

"An identity theft conviction requires proof that the defendant knowingly obtained, possessed, used, or transferred a means of identification or financial information of another person, living or dead, with the intent to commit, or to aid or abet, any crime."[4]

Financial information is defined to include "account numbers . . . [and] other information held for the purpose of account access or transaction initiation."[5]

We review de novo questions of statutory interpretation.[6]

Here, there is no dispute over the sufficiency of the evidence that Christian intended to commit the crime of theft when he twice "swiped" the stolen debit card through the terminal at the Burlington Coat Factory retail store. The narrow

---

[1] In re Winship, 397 U.S. 358, 364, 90 S. Ct. 1068, 25 L. Ed. 2d 368 (1970).

[2] State v. O'Neal, 159 Wn.2d 500, 505, 150 P.3d 1121 (2007).

[3] State v. Fedorov, 181 Wn. App. 187, 194, 324 P.3d 784 (2014) (quoting State v. Smith, 155 Wn.2d 496, 501, 120 P.3d 559 (2005)).

[4] Id. (quoting RCW 9.35.020(1)).

[5] RCW 9.35.005.

[6] State v. Veliz, 176 Wn.2d 849, 853-54, 298 P.3d 75 (2013).

question is whether Christian's actions fall within the term "use" of "a means of identification or financial information of another person"---the stolen debit card in this case.

We start with the oft-repeated principles guiding our efforts to interpret the word "use" in the identity theft statute:

> In construing a statute, [our] primary goal is to ascertain and give effect to the legislative intent. If a statute is unambiguous, its meaning . . . is to be derived from the language used in the statute itself. The fact that a word is not defined in a statute does not mean the statute is ambiguous. Rather, an undefined term should be given its plain and ordinary meaning unless a contrary legislative intent is indicated.[7]

The identity theft statute does not define the term "use." Thus, we may look to the dictionary for a definition of the term's ordinary meaning.[8]

The American Heritage Dictionary defines "use" as "[t]o put into service or apply for a purpose."[9] Black's Law Dictionary contains similar definitions: "To employ for the accomplishment of a purpose; to avail oneself of <they use formbooks>."[10]

Applying these definitions to the identity theft statute, we conclude that the State was required to prove that Christian either "put into service" or "employed for the accomplishment of a purpose" a "means of identification or financial

---

[7] Ravenscroft v. Washington Water Power Co., 136 Wn.2d 911, 920-21, 969 P.2d 75 (1998) (internal citations omitted).

[8] Greenhalgh v. Dep't of Corr., 180 Wn. App. 876, 884, 324 P.3d 771 (2014).

[9] THE AMERICAN HERITAGE DICTIONARY 1966 (3rd ed. 1992).

[10] BLACK'S LAW DICTIONARY 1776 (10th ed. 2014).

information of another person"—the stolen debit card in this case. Completion of a transaction in which a stolen debit card is used is not an element of the crime of identity theft.

This reading of the statute is consistent with other provisions of the statute and case law.

First, the language of the statute implicitly recognizes that "use" of financial information, in this case the stolen debit card, does not require completion of the intended crime. RCW 9.35.020(6) provides that a person may be punished separately for any other crime completed in the commission of the identity theft.

In State v. Milam, Michael Milam was convicted of second degree theft and second degree identity theft when he used a stolen ATM card to withdraw $360.[11] He argued that his convictions for both crimes violated the prohibition against double jeopardy because proof of the theft of the property was an element of second degree identity theft.[12] This court disagreed and affirmed Milam's convictions for both crimes.[13] The court noted that second degree theft

> required proof that the defendant wrongfully deprived another person of property . . . [but] second degree identity theft required proof that the defendant knowingly obtained, possessed, used or transferred a means of identification or financial information with *intent* to commit another crime. Commission of another crime was not an element of the identity theft statute."[14]

---

[11] 155 Wn. App. 365, 367, 228 P.3d 788 (2010).

[12] Id. at 367-68.

[13] Id. at 371-75.

[14] Id. at 371 (emphasis in the original).

This court cited to the supreme court's holding in State v. Baldwin that "[I]dentity theft only 'requires use of a means of identification with the *intent* to commit an unlawful act.'"[15] Commission of the other crime is not an element of identity theft.

Other case law also supports our view that "use" does not require successful commission of the intended crime. For example, in State v. Fedorov,[16] the State charged Vadim Fedorov with identity theft when he provided an officer with a false name with the intent to commit the crime of knowingly making a false or misleading statement to a public servant. This court affirmed Fedorov's conviction and held that, by giving the police officer another man's name and date of birth, Fedorov "used" the name of that person.[17] Once that element was established, the State only had to prove that Fedorov intended to commit any crime. The crime did not have to be specified.[18]

Christian argues that the two failed transactions reflect, at most, attempted use of another's financial information, not use. Accordingly, he argues that the two challenged convictions must be reversed and dismissed with prejudice. We disagree.

First, he too, cites dictionary definitions of the word "use," but those citations do not help him. Citing to Webster's Third New International Dictionary,

---

[15] Id. at 372 (quoting State v. Baldwin, 150 Wn.2d 448, 455, 78 P.3d 1005 (2003)).

[16] 181 Wn. App. 187, 190-91, 324 P.3d 784 (2014).

[17] Id. at 196-97.

[18] Id. at 197-98.

he correctly states two of its definitions of the word: "to put into action or service: have recourse to or enjoyment of: EMPLOY" and "to carry out a purpose or action by means of: make instrumental to an end or process: turn to account; UTILIZE."[19]

Whether we use "employ" or "utilize" for the word "use," the result is the same. Christian both employed and utilized the stolen debit card when he "swiped" the card at the terminal in the store. At that point, he both employed and utilized the "means of identification or financial information of another person"---the stolen debit card. The crime of identity theft was complete. It did not matter that the bank declined these two transactions.

Second, he argues that, if the legislature intended "use" to include attempt, it would have included the latter term in the statute. We disagree.

In making this argument, Christian cites to other Washington statutes that include the term "attempt." But none of these other statutes include the term "use."[20] This is not helpful

He also cites to identity theft statutes from other jurisdictions that include the term "attempt." But this is not helpful because it tells us nothing about the legislative intent of the legislature of the state of Washington.

Finally, there is nothing in the legislative history of the identity theft statute indicating that the legislature intended anything other than the ordinary plain

---

[19] Appellant's Opening Brief at 15 (quoting WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 1577, 2523-24 (1993)).

[20] See, e.g., RCW 9A.72.120.

meaning of the term "use."[21] Accordingly, we rely on the ordinary meaning of that word in interpreting the legislature's intent.

Having decided what the word "use" means in the identity theft statutes, we next determine whether the evidence at trial was sufficient to support the two challenged convictions for identity theft. We hold that the evidence was sufficient to support both.

The owner of the stolen debit card testified that she did not use her car on July 20, 2015, but when she went to her car the next day, she noticed that her wallet was missing. Her wallet contained the U.S. Bank debit card. She called U.S. Bank and got a printout of the charges to her debit card. She had not made any of the July 20, 2015 transactions listed on the printout.

An employee of U.S. Bank testified that he spoke with the owner of the card and reviewed her debit card transactions. A transaction at the Burlington Coat Factory in Anacortes, Washington, was approved for $109.06 at 11:51 a.m. on July 20, 2015. U.S. Bank declined the two additional transactions that followed, one at 11:57 a.m. for $213.39, and one at 11:58 a.m. for $113.39.

A loss prevention agent at the Burlington Coat Factory, testified that he matched the store's receipt printout to its security videotapes, which showed all of the July 20, 2015 transactions using the stolen debit card. The videotapes were played at trial.

An officer of the Anacortes Police Department testified that he had previously arrested Christian on June 29, 2015. He identified Christian on the

---

[21] Ravenscroft, 136 Wn.2d at 920-21.

Burlington Coat Factory security videos based on Christian's profile, tattoos, and distinctive shoes.

A detective examined the store videotapes and receipts as part of his investigation into the unauthorized use of the stolen debit card. He had interviewed Christian after his arrest on July 23, 2015, and testified to what Christian told him. Christian initially denied being at the Burlington Coat Factory, but then admitted he used the stolen debit card there.

Considering the evidence in the light most favorable to the State, substantial evidence supports the trial court's findings, beyond a reasonable doubt, that Christian committed the second and third counts of second degree identity theft.

## JURY DEMAND FEE

Christian argues that the trial court exceeded its statutory authority by ordering him to pay a jury demand fee of $125. The State properly concedes error in the imposition of this cost. Accordingly, we reverse and remand with instructions to strike it.

## APPELLATE COSTS

Christian asks this court to deny the State its costs. The State has responded that it is not seeking costs on appeal. Accordingly, no costs shall be awarded to the State.

We affirm the convictions for identity theft, reverse the imposition of the jury demand fee as a cost, and remand for the trial court to strike this cost only.

_____
Cox, J.

WE CONCUR:

_____          _____