# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| BARNEY M. YORKSTON, JR. and CAROLLYN D. YORKSTON, in their individual and marital estate, and as representatives of a class, | DIVISION ONE |
| | No. 78530-3-I |
| Appellants/Cross-Respondents, | PUBLISHED OPINION |
| v. | |
| WHATCOM COUNTY, a municipal entity, | |
| Respondent/Cross-Appellant. | FILED: January 21, 2020 |

DWYER, J. — Barney Yorkston and his wife, Carollyn Yorkston, brought this class action seeking a declaratory judgment, quiet title, and injunctive relief against Whatcom County (the County), asserting that a county road abutting their property had a right-of-way (ROW) 30 feet wide, and not 60 feet wide as had been the County's stated position for nearly a century. The trial court concluded that the ROW was 60 feet wide. Yorkston appeals, asserting that a procedural irregularity in the 1884 county commission process culminating in its order designating the road meant that the 30-foot ROW of a preexisting road was retained. We affirm.

I

The earliest recorded effort to designate a road in the Birch Bay area of the County took place on February 14, 1876, well before statehood, when a

group of landowners petitioned the County to authorize creation of a private road. On the same day, a viewer's report was filed and the private road was declared and recorded by the county. This road ran directly north from the halfway point between Sections 31 and 32, Township 40 North, Range 1 East for a quarter mile before turning due west and running for one mile to reach Birch Bay. The road, which would later be designated as Road 46, occupied a ROW that was 30 feet wide. However, it was not surveyed or platted at this time.

The following year, on November 8, 1877, area landowners presented a petition for the creation of a public road to run from the west line of Section 25, Township 40 North, Range 1 West, westerly along the shoreline of Birch Bay to the line between Sections 23 and 24. There, the road turned due north to reach Drayton Harbor and ran along the shoreline to the far end of the Semiahmoo Spit. This road also occupied a 30-foot-wide ROW for its entire length. A viewer's report was provided for this road on February 6, 1878, and the route was ordered established as Road 22 on August 6, 1878, by the County's Board of Commissioners (Commission).

Both the Road 46 and Road 22 petitions had been signed by B.H. Bruns. Bruns acquired land from the United States government in 1871 and owned over 1,000 acres in the area at the time, including the southeast and southwest quarters of Section 24, through which Road 22 ran. Bruns's property originally included land in Section 25 that he conveyed to Lawrence Nessel in 1873. Road 22 crossed this property. In 1883, Bruns began serving a term as one of three county commissioners.

2

In May 1883, landowners living beyond Road 46's eastern end petitioned for the creation of an east-west road to connect Road 46 to an existing road to Ferndale. In June, County surveyor George Judson surveyed this east-west road, which became Road 42. On August 7, the Commission issued the following order of survey:

> Ordered that all the unsurveyed portions of the travelled Road leading from the Ferndale Ferry to Birch Bay and around the Bay to the N.E. corner of Lot 1 sec 23 tnsp 40 Range 1 west be surveyed by the County Surveyor and platted and report returned to the County Auditor on or before the 10th day of Sept. 1883, said Road to be known as the Birch Bay and Ferndale Road.

The west end of this road terminated at the home of B.H. Bruns. Judson, pursuant to this order, surveyed the routes connecting Road 42 to Ferndale and to Bruns's homestead. The route connecting Road 42 to Ferndale was surveyed and designated as Road 47. Judson also surveyed and platted Road 46 between the endpoints described in the 1876 petition, along with the portion of Road 22 that ran along Birch Bay toward Bruns's house. Judson referred to all of these roads collectively in his field notes as comprising the Ferndale and Birch Bay Road. Neither the Commission's order nor any of Judson's documentation specified a width for the road.

On January 15, 1884, the County published a notice in the Whatcom Reveille, directed to affected landowners, declaring the County's intent to designate the entire route as a county road, and explaining that any objections to such designation, or claims for damages, must be filed with the County auditor no later than the first day of the Commission's February term. There is no record

No. 78530-3-I/4

or indication of any objection to the road's designation.  On February 5, 1884, 22

days later, the Commission ordered:

> In the matter of the resurvey of portions of travelled road between Ferndale Ferry & Birch [Bay] is ordered that the Plat and Field Notes of Portions of the said roads be received and accepted, and no objections having been made in writing, or otherwise to the legalization of said Road, it is ordered that in accordance with chapter CCXXXVI of the Code of Washington, said Road is hereby declared a legal lawful County Road and the said Plat and Field notes are hereby ordered recorded.

The order did not specify a width for this road, but the statute in effect at

the time, chapter 229, section 2979 of the Code of 1881, provided a default

width:

> All county roads shall be sixty feet in width unless the county commissioners shall, upon the prayer of the petitioners for the same, determine on a less number of feet in width.

CODE OF 1881, ch. 229, § 2979, at 514.

At this time, Bruns owned all of the property along the road within Sections

23 and 24, while the area within Section 25 was Nessel's property.[1]

There is no further history of this road in the record prior to 1916.  That

year, county engineer C.M. Adams resurveyed this road between the west line of

Section 25 and the line between Sections 23 and 24 to the west.  The survey

---

[1] While more general historical information was not before the trial court, we note that, in the decades before statehood, Whatcom County's population increased dramatically.  At the 1870 census, when the County's boundaries included present-day Skagit County, it was recorded as having 534 inhabitants (not including Native Americans).  By 1890, though reduced to its current boundaries, Whatcom County boasted a population of 18,591.  BUREAU OF THE CENSUS, U.S. DEP'T OF COMMERCE, POPULATION OF STATES AND COUNTIES OF THE UNITED STATES: 1790 TO 1990, at 176-77 (Mar. 1996), https://www.census.gov/population/www/censusdata/PopulationofStatesandCountiesoftheUnited States1790-1990.pdf [https://perma.cc/Z8P2-G2TL].  It was in this context of rapid growth that the County's road-building efforts took place.

4

map refers to the surveyed road as "County Roads No. 22-46" and stated that the road's ROW was 60 feet wide.

In November 1920, Whatcom County's prosecuting attorney sent a letter to B.H. Bruns's daughter, Wilhelmina Julien, stating the County's position that the ROW was 60 feet wide. Another of B.H. Bruns's daughters, Emma Bruns Morgan, lived along Birch Bay Drive just west of Harborview Road and platted her property in 1925 and again in 1939, with both plats indicating that the ROW was 60 feet wide.

Meanwhile, in 1920, A.F. and Augusta Stone purchased land in the southwest quarter of Section 24 that included Yorkston's current property. The Stones began selling subdivided lots that connected to, and ended at, the road's ROW, but did not specify the ROW's width. In 1922, the Stones platted their property in the northwest quarter of the southeast quarter of Section 24, calling this subdivision "Cottonwood Beach Park" and representing the road, now called Birch Bay Drive, as having a ROW of 60 feet.

In 1930, the Commission resolved to construct Lateral Highway No. 2 along Birch Bay over the existing Road 46. The survey for this new highway showed a ROW of 60 feet for its entire length, including the full distance of the part of Road 46 whose width is now in dispute. The specifications for the road provided for clearing and grubbing to be done for a width of 20 feet on either side of the road's center line and for culverts, with a length of up to 45 feet from one side of the road to the other, to be installed at various points along the highway.

In 1944, the County granted its first utility franchise in the area to the Blaine-Pleasant Valley Water Association "to lay, construct, maintain and repair water pipe lines and water mains and all necessary laterals on, across and over . . . Road No. 46 from its intersection with the old Blaine-Ferndale paved road to Birch Bay" for a period of 25 years. Ten years later, the County granted a 50-year franchise to the Birch Bay Water Company "to construct, operate and maintain a water pipe line . . . [o]n Road No. 22-46, commencing at section line between Sections 31 and 32, Township 40 North, Range 1 East, W.M., thence West to Birch Bay; thence in a generally Northwesterly direction along the shores of Birch Bay, to the end of said Road No. 22-46."

In 1961, the County granted Puget Sound Power & Light (and its successors in interest) a 50-year franchise to "construct, maintain and operate transmission and distribution lines for transmitting and distributing electric energy for power, light, heat and all other purposes and uses, together with poles, wires and other appurtenances, including on such poles telephone lines as one of such appurtenances, upon, over, along and across" "all of the streets, avenues, alleys, lanes and public places" in the recorded plats of the area, all of which showed a 60-foot ROW for Birch Bay Drive.

In 1983, a County ordinance granted Cablevision a 25-year non-exclusive franchise to operate and maintain coaxial cable along Birch Bay Drive for its entire length. A 2005 ordinance gave Puget Sound Energy a 25-year franchise to "set, erect, lay, construct, extend, support, attach, connect, maintain, repair, replace, enlarge, operate and use facilities in, upon, over, under, along, across

and through the Franchise Area to provide for the transmission, distribution and sale of electrical energy for power, heat, and light, and any other purposes for which electrical energy may be used."

All of these franchise agreements were predicated on Birch Bay Drive's ROW being 60 feet in width, and today these utility lines occupy various portions of the full ROW. In addition, since 1994, both the utilities and several private landowners along the roadway—including Yorkston—have sought and received encroachment permits to use portions of the 60-foot ROW. Plats and short plats prepared on behalf of the County and various landowners also consistently represent the ROW as being 60 feet in width.

In February 2015, the Yorkstons filed this declaratory judgment action pursuant to Washington's Uniform Declaratory Judgments Act (UDJA), chapter 7.24 RCW, seeking a determination regarding the width of Birch Bay Drive's ROW. In September, the matter was certified as a class action, with Yorkston representing the class. Yorkston asserted that the road's ROW was 30 feet wide, while the County maintained that it was 60 feet wide and, as a counterclaim, asserted a prescriptive easement over a 60-foot-wide ROW.

A two-day bench trial was held in September 2017, with supplemental argument in December of that year. The trial court delivered its oral decision on January 3, 2018. Findings of fact and conclusions of law, along with the final order of judgment, were entered on May 29, 2018.[2] Among the trial court's conclusions of law were the following:

---

[2] The trial court did not make a determination as to the location of the center line of the county road. Nor was it required to do so. "The issuance of a declaratory judgment is

13. The actions that the County Commissioners took in 1883 and 1884 under the 1881 Act constituted establishment of a road which overrode or expanded the existing roads, into a single route from the Ferndale ferry to the home of Bruns. The acts of the County commissioners in 1883 and 1884 were a valid exercise of their power under Chapter CCXXXVI, because the roads in issue were unsurveyed and unplatted. The County Commissioners did not state a width for this road.

14. The County Commissioners' February, 1884 Order establishing a road named the Ferndale and Birch-Bay Road was a valid legislative act.

15. Chapter 229, § 2979-2980, Code of Washington, Acts of a General Nature, 1881, was a controlling statute at the time of the Commissioners' 1884 Order, and provided that "All county roads shall be sixty feet in width unless the county commissioners shall, upon the prayer of the petitioners for the same, determine on a less number of feet in width." Therefore, by virtue of no width having been specified for the road and its accompanying right-of-way in the 1884 Order, the width of the right-of-way, including County Road #46 from its west end near Bruns's home in Section 23, Township 40 N, Range 1 W, to its east end on the section line between Sections 31 and 32, Township 40 N, Range 1 E, was to be 60 feet by operation of law, which is also the ruling of this court as to its present legal width.

Having determined that the ROW was 60 feet wide, the trial court rejected the County's counterclaim of a prescriptive easement. Yorkston and the County filed notices of appeal and of cross appeal, respectively, the following month.

II

As a preliminary matter, we address the scope of the record before us. While Yorkston assigns error to several of the trial court's findings of fact, he failed to provide us with a verbatim report of proceedings or the complete exhibits relied upon by the trial court.

---

discretionary." Bloome v. Haverly, 154 Wn. App. 129, 146, 225 P.3d 330 (2010) (citing King County v. Boeing Co., 18 Wn. App. 595, 601-02, 570 P.2d 713 (1977)). Neither party, in its briefing, contends that declining to decide the center line issue was an abuse of discretion.

"Washington law shows a strong preference for deciding cases on the merits." Luckett v. Boeing Co., 98 Wn. App. 307, 313, 989 P.2d 1144 (1999) (citing Griffith v. City of Bellevue, 130 Wn.2d 189, 192, 922 P.2d 83 (1996)). Nevertheless, the appellant bears the burden of perfecting the record so that we have before us all of the evidence relevant to deciding the issues presented. Rhinevault v. Rhinevault, 91 Wn. App. 688, 692, 959 P.2d 687 (1998). When an appellant fails to so perfect the record, we are necessarily compromised in our ability to fairly evaluate the findings in light of that record. In re Parentage & Custody of A.F.J., 161 Wn. App. 803, 806 n.2, 260 P.3d 889 (2011), aff'd, 179 Wn.2d 179, 314 P.3d 373 (2013). In such situations, the trial court's findings of fact may be accepted as verities. A.F.J., 161 Wn. App. at 806 n.2; see also Happy Bunch, LLC v. Grandview N., LLC, 142 Wn. App. 81, 88 n.1, 173 P.3d 959 (2007); St. Hilaire v. Food Servs. of Am., Inc., 82 Wn. App. 343, 351-52, 917 P.2d 1114 (1996); Rekhi v. Olason, 28 Wn. App. 751, 753, 626 P.2d 513 (1981); Gaupholm v. Aurora Office Bldgs., Inc., 2 Wn. App. 256, 257, 467 P.2d 628 (1970). This has long been the rule. See Apostle v. Lillions, 8 Wn.2d 118, 121, 111 P.2d 789 (1941); Deller v. Long, 96 Wash. 372, 373, 165 P. 98 (1917). A court may decline to reach the merits of an issue if the burden of perfecting the record is not met. Rhinevault, 91 Wn. App. at 692 (citing State v. Wheaton, 121 Wn.2d 347, 365, 850 P.2d 507 (1993)).

Here, the County has provided a complete verbatim report of proceedings and all relevant exhibits, thus perfecting the record. Accordingly, we opt to

decide this case on its merits and evaluate whether substantial evidence supports the trial court's factual findings.

III

We next address what, precisely, is at issue between the parties. Yorkston does not seek to invalidate the 19th century Commission order designating the road or to pursue a takings claim that, if asserted, would be well past stale. Instead, Yorkston brought the present action seeking a declaratory judgment. The UDJA governs declaratory judgment actions in Washington. Schreiner Farms, Inc. v. Am. Tower, Inc., 173 Wn. App. 154, 159, 293 P.3d 407 (2013). RCW 7.24.020 provides:

> A person interested under a deed, will, written contract or other writings constituting a contract, or whose rights, status or other legal relations are affected by a statute, municipal ordinance, contract or franchise, may have determined any question of construction or validity arising under the instrument, statute, ordinance, contract or franchise and obtain a declaration of rights, status or other legal relations thereunder.

"The UDJA does not have an explicit statute of limitations, but lawsuits under the UDJA must be brought within a 'reasonable time.'" Auto. United Trades Org. v. State, 175 Wn.2d 537, 541-42, 286 P.3d 377 (2012) (quoting Brutsche v. City of Kent, 78 Wn. App. 370, 376-77, 898 P.2d 319 (1995)). "'What constitutes a reasonable time is determined by analogy to the time allowed for . . . a similar [action] as prescribed by statute, rule of court, or other provision.'" Cary v. Mason County, 132 Wn. App. 495, 501, 132 P.3d 157 (2006) (internal quotation marks omitted) (quoting Brutsche, 78 Wn. App. at 376-77).

We have previously determined that, as concerns declaratory judgment actions filed to challenge the acts of a county legislative authority, the 20-day limitation period set forth in RCW 36.32.330 applies. This provides:

> Any person may appeal to the superior court from any decision or order of the board of county commissioners. Such appeal shall be taken within twenty days after the decision or order, and the appellant shall within that time serve notice of appeal on the county commissioners.

RCW 36.32.330.

This 20-day limitation period for appeals of a county commission's decision is a rule of long standing. The 1881 territorial code, in effect at the time of the Commission's 1884 action, provided:

> Any person may appeal from the decision of the board of county commissioners to the next term of the district court of the proper district. Such appeal shall be taken within twenty days after such decision, and the party appealing shall notify the county commissioners that the appeal is taken, at least ten days before the first day of the next term of the court appealed to.

CODE OF 1881, ch. 209, § 2695, at 467.

The same limitation period now obtains that obtained in the 1880s.[3] As the record shows, no objection, nor any form of appeal, was made within 20 days of the Commission's 1884 decision. Thus, the validity of the 1884 Commission decision is beyond challenge. Yorkston is free to seek a declaration as to the effect of that valid decision. It is in this context that we turn to the merits of this dispute.

---

[3] "The provisions of a statute, so far as they are substantially the same as those of a statute existing at the time of their enactment, must be construed as continuations thereof." RCW 1.12.020.

11

IV

The main thrust of Yorkston's argument is that the trial court's findings of fact regarding the effect of the Commission's 1884 order are unsupported by the evidence. Properly construed, Yorkston avers, the 1884 order merely consolidated a public and a private road into a single designated route without in any way altering or expanding the ROWs of those existing routes. However, contrary to Yorkston's assertion, after reviewing the full record, the trial court's findings of fact are amply supported by the evidence adduced at trial.

A

"The determination of where to place a road has traditionally been a distinctly legislative decision." Harris v. Hornbaker, 98 Wn.2d 650, 658, 658 P.2d 1219 (1983) (citing State ex rel. Schroeder v. Superior Court of Adams County, 29 Wash. 1, 69 P. 366 (1902)). Moreover, "[w]e presume that municipal ordinances were validly enacted." City of Bothell v. Gutschmidt, 78 Wn. App. 654, 660, 898 P.2d 864 (1995). Here, the validity of the order at issue is beyond challenge. Thus, we initially address the nature and extent of the Commission's legislative power to create a road in 1884. To do so, we must examine the framework created by territorial statutes in effect at the time.

In reviewing and applying the pertinent statutes, we discern and implement the legislature's intent. State v. J.P., 149 Wn.2d 444, 450, 69 P.3d 318 (2003) (citing Nat'l Elec. Contractors Ass'n v. Riveland, 138 Wn.2d 9, 19, 978 P.2d 481 (1999)). If a statute's meaning is plain, we effectuate it as an expression of the legislature's intent. State v. Villanueva, 177 Wn. App. 251,

254, 311 P.3d 79 (2013). In reviewing pertinent statutes, "it is always safer not to add to, or subtract from, the language of the statute unless imperatively required to make it a rational statute." Applied Indus. Materials Corp. v. Melton, 74 Wn. App. 73, 79, 872 P.2d 87 (1994). Courts "cannot add words to an unambiguous statute when the legislature has not included that language." Greenhalgh v. Dep't of Corr., 180 Wn. App. 876, 884, 324 P.3d 771 (2014).

"The public must have roads to travel on, and when the [County] Commissioners have duly established them in pursuance of law, a complainant over whose land they run can assert his right to damages, but cannot call in question the right of the Commissioners to locate and open public roads." King County v. Neely, 1 Wash. Terr. 241, 246 (1868).[4] At the time of the 1884 order, the territorial code vested county commissions with the power to designate county roads:

> The several boards of county commissioners are authorized and required . . . [t]o lay out, discontinue or alter county roads and highways within their respective counties, and do all other necessary acts relating thereto according to law.

CODE OF 1881, ch. 209, § 2673, at 464.

The territorial code also prescribed a procedure by which county roads were to be created. While the 1855 Session Laws provided that "[a]t any regular

---

[4] In Neely, a landowner made a complaint to the King County Board of Commissioners for damages after the commission designated a road that traversed his land. 1 Wash. Terr. at 242. After the commission made a determination as to damages owed to Neely, it proceeded with an order to open the road. Neely appealed to the territorial district court. Neely, 1 Wash. Terr. at 242. The trial judge directed the jury to a special verdict and presented to the jury a question of whether it approved of the commission's act. Neely, 1 Wash. Terr. at 243. When the jury returned an answer disapproving of the act, the trial court ordered that the commission's act be vacated. Neely, 1 Wash. Terr. at 243. On appeal, the territorial Supreme Court held that damages were the only remedy available to Neely, reversing the trial court's declaration that the commission's action, and the road, be vacated. Neely, 1 Wash. Terr. at 246-47.

meeting, said board may establish, alter, or vacate county roads, and cause the same to be laid out, marked or surveyed, and worked and opened, as they shall deem most for the public interest," LAWS OF 1855, § 2, at 44, the 1869 Session Laws described the procedure available to counties to create roads:

> All applications for laying out, altering or locating county roads, shall be by petition to the board of county commissioners of the proper county, signed by at least twelve householders of the county residing in the vicinity where said road is to be laid out, altered or located, which petition shall specify the place of beginning, the intermediate points, if any, and the place of termination of said road.

LAWS OF 1869, § 2, at 267.

If the county commission concluded that the road would be of "public utility," then the viewer's report, and any survey and plat, were to be recorded, and the road "shall be considered a public highway, and the commissioners shall issue an order directing said road to be opened." LAWS OF 1869, § 5, at 269.

Relying on this second statute, the trial court herein concluded that "[a]t the time of the County's actions in 1883 and 1884, and the 1884 Order, the County could not have created a new road based upon a resolution of the County Commissioners alone," because a petition was required. This was wrong. The trial court misapprehended a procedural rule as creating a substantive bar to the Commission's authority to create roads. In addition, the trial court did not consider the absence of any objection to the Commission's 1884 decision. It did not consider that any challenge to the Commission's action—based on the absence of a petition request—was required to be brought in court within 20 days of the Commission action (not 130 years later). And it did not consider that, in

14

the absence of a challenge, the Commission's establishment of a road was valid. The trial record contains no indication of an 1884 challenge to the County's action. Whatever the County did, it was valid.

The Commission plainly had the authority to create roads. Chapter 236, the statute invoked by the Commission, provided in pertinent part:

> Sec. 3041. Where by reason . . . of defective survey or record, or in case of such numerous alterations of any county road since the original location and survey, that its location cannot be accurately defined by the papers on file in the proper county auditor's office, or where, through some omission or defect, doubts may exist as to the legal establishment or evidence of establishment of any county road, or highway, the board of county commissioners of the proper county may, if they deem it necessary, order such highway, or any part of a county road used and traveled by the public, to be resurveyed, platted and recorded as hereinafter provided.
>
> . . . .
> Sec. 3043. At least twenty days before the day fixed by the auditor, . . . a notice in which shall be inserted the name of each resident owner or occupier of said land lying on the portion of road sought to be legalized, or abutting on the line of survey, shall be published four successive weeks in some newspaper published in the county, if any such there be . . . .
>
> . . . .
> Sec. 3046. In case objection shall be made in writing by any person claiming to be injured by the survey made, the board of county commissioners shall have full power to hear and determine upon the matter, and may, if deemed advisable, order a change to be made in the survey. Upon the final determination of the board, or in case no objection be made at the term named in the notice of the survey, they shall approve of the same and cause the field notes and plat of the county road to be recorded, as in case of the establishment and alteration of highways, and thereafter such records *shall be received by courts as conclusive proof of the establishment and lawful existence of such county road and public highway*, according to such survey and plat.

CODE OF 1881, ch. 236, §§ 3041, 3043, 3046, at 528-30 (emphasis added).

The trial court correctly concluded that the Commission had the authority conferred by chapter 236 to order the survey and establishment of a new road overriding existing roads, neither of which had ever been surveyed. The trial court also concluded that, given the wording of chapter 229, section 2979, any road established after that statute's enactment would be 60 feet in width unless otherwise specified. Having elucidated the extent of the Commission's power and the effect of its actions, in light of the trial record and the then-material statutes, we turn now to the Commission's order itself to determine whether the evidence before the trial court supports the conclusion that the County's act created a road with a ROW 60 feet wide.

B

When evaluating evidence in a bench trial, our review is limited to determining whether the trial court's factual findings are supported by substantial evidence and whether those findings support the trial court's conclusions of law. Standing Rock Homeowners Ass'n v. Misich, 106 Wn. App. 231, 242-43, 23 P.3d 520 (2001). Substantial evidence is the "quantum of evidence sufficient to persuade a rational fair-minded person the premise is true." Sunnyside Valley Irrig. Dist. v. Dickie, 149 Wn.2d 873, 879, 73 P.3d 369 (2003). On review, the evidence and all reasonable inferences therefrom must be viewed in the light most favorable to the prevailing party. Korst v. McMahon, 136 Wn. App. 202, 206, 148 P.3d 1081 (2006). Although the trier of fact is free to believe or disbelieve any evidence presented at trial, "[a]ppellate courts do not hear or weigh evidence, find facts, or substitute their opinions for those of the trier-of-

16

fact." Quinn v. Cherry Lane Auto Plaza, Inc., 153 Wn. App. 710, 717, 225 P.3d 266 (2009) (citing Thorndike v. Hesperian Orchards, Inc., 54 Wn.2d 570, 572, 343 P.2d 183 (1959)). We review questions of law de novo. Sunnyside Valley, 149 Wn.2d at 880.

In Yorkston's opening brief, the bold claim is made that several of the trial court's findings of fact are unsupported "by any evidence." The trial court's findings of fact with regard to the intentions and actions of B.H. Bruns and the Commission, Yorkston claims, "amount to 'assumptions' and 'conjectures.'" We disagree.

Regarding Bruns, the trial court found that

Bruns lived in the area and would have been aware of the existence of the roads and would have used them to get from his residence along Birch Bay into Bellingham. As he was a Commissioner, it is presumed that Bruns would have known how the law works and how things operate with regard to the establishment of roads.

Finding of Fact 13.

Bruns voted to survey the Ferndale and Birch Bay Road and for the 1884 Order. By virtue of his position as a County Commissioner, he is presumed to know that the statutory default width of a county road at the time was 60 feet.

Finding of Fact 16.

Bruns did not seek damages or object that this property would be burdened in any way by an additional 30 feet of right-of-way.

Finding of Fact 17.

Yorkston claims that it is "pure speculation" to engage in fact-finding as to what Bruns likely thought at the time. Yorkston is wrong. In issuing its order, the Commission acted in a legislative capacity. Courts presume that legislative

17

actors know the law in the area in which they legislate. Price v. Kitsap Transit, 125 Wn.2d 456, 463, 886 P.2d 556 (1994). The trial court drew an inference consistent with this presumption. It was free to do so. Moreover, as the fact finder, the trial court was allowed to reasonably infer, from Bruns's involvement in petitioning for Roads 46 and 22, coupled with his action as a commissioner to establish his homestead as the terminus of the Ferndale-Birch Bay Road, that he relied on these roads for transportation. Yorkston presents no evidence to contradict either inference. Instead, Yorkston points to Bruns's signature on the Road 22 petition and claims that, by signing a petition for a road with a 30 foot ROW in 1877, Bruns declared an enduring preference for roads of that width. But the trial judge, as fact finder, was not required to draw that inference. This is especially so in light of the evidence that the Commission's purpose was to establish a uniform road over a piecemeal and only partially developed series of roadways. The trial court acted within its authority in drawing the inferences it did, while declining to draw others.[5]

---

[5] Yorkston argues that the ROW must have been created at 30 feet because to create a 60 foot ROW would have been an unconstitutional taking of private land. He provides nothing to support this assertion. "'Eminent domain' is the power of a sovereign to condemn property for public use without the owner's consent." Pub. Util. Dist. No. 1 of Okanogan County v. State, 182 Wn.2d 519, 534, 342 P.3d 308 (2015) (citing State ex. rel. Eastvold v. Yelle, 46 Wn.2d 166, 168, 279 P.2d 645 (1955)). As to Bruns, his actions clearly manifested consent to the establishment of the road through his land. There is no evidence that Bruns believed that the establishment of a grander, uniform road, leading literally to his front door, decreased the value of his real estate holdings.

As to Nessel, Yorkston argues only that the 1884 publication of notice to the affected landowners did not state a width for the surveyed road and, thus, Nessel could not have had notice of an increase in the ROW's width. However, again, Nessel did not make any objection to the County's action before, during, or after the time when the road was surveyed, platted, and established. It may also be presumed that the existence of the county road benefited, and did not impair, the value of Nessel's real property. The presumption that improvements benefit adjacent parcels has long been accepted by Washington courts. See N. Pac. Ry. Co. v. City of Seattle, 46 Wash. 674, 679, 91 P. 244 (1907). The territorial code in effect at the time of the County's 1884 order authorized counties to create road districts to facilitate taxation of property owners who benefited from road construction or, in some instances, to require property owners to perform

Finally, the trial court was not even required to draw an inference, let alone a conjecture, to find that Bruns did not object to establishment of the county road with the statutorily mandated ROW. As the record shows, no landowner, let alone Bruns, raised such an objection. And, as a commissioner, Bruns voted in favor of the Commission's action.

Yet Yorkston, undeterred, similarly claims that the following findings regarding the Commission's collective motivation to issue its order of survey are unsupported by the evidence:

> The County Commissioners in 1883 decided to create a uniform road from Birch Bay to the Ferndale Ferry, and it was to include the previous Road 22, the previous private road referenced as Road 46 in the County Road Book, and whatever else was involved in between the Ferndale Ferry and Birch Bay.

Finding of Fact 14.

> The commissioners invoked Chapter CCXXXVI based upon their conclusion that there was some confusion and uncertainty as to where the roads were, what the roads were in the area, their locations and how they were established, and they intended to create one uniform road.

Finding of Fact 15.

Again, substantial evidence supports these findings of fact. The Commission's order of survey directed that "all the unsurveyed portions of the travelled Road leading from the Ferndale Ferry to Birch Bay and around the Bay" ending at Bruns's homestead be surveyed and platted and the road was "to be known as the Birch Bay and Ferndale Road." The survey notes relied upon by

maintenance on the roads themselves. See CODE OF 1881, ch. 229, §§ 2987-2994, at 516-19. Clearly, this was premised on the notion that the existence of a road adjacent to one's property enhanced the property's value.
Yorkston introduced no evidence to rebut any of this.

the Commission similarly referred to a singular "Ferndale and Birch Bay Road." The Commission's order of February 6, 1884, stated that "said Road is hereby declared a legal lawful County Road," containing no reference to a collection of roads. Further, the language of chapter 236, section 3041, clearly indicates that its purpose was to facilitate clarity in the alignments of county roads when the road's "location cannot be accurately defined by the papers on file" or "doubts may exist as to the legal establishment or evidence of establishment of" county roads. CODE OF 1881, ch. 236, § 3041, at 528-29. It is undisputed that no survey of Roads 22 or 46 existed at the time the statutory process was invoked.

Testimony at trial from Ty Whitcomb, Larry Steele, and Eric Kleinecht, three surveyors formerly employed by Whatcom County, also supported these findings. Whitcomb testified that the 1884 action by the Commission effectively reestablished the county road and superseded the earlier establishment of Road 22 to, more probably than not, set the ROW's width at 60 feet. Steele testified in accord with this and further testified that the absence of a reference to width in the 1884 order meant that the 60-foot default width applied. This testimony supported the conclusion arrived at by the trial court in its oral ruling:

> I believe then that this is the creation of a new road. This road was given a specific name. It incorporated many other pieces of roadway that apparently were already in existence according to the declaration by the commission when they say we are using this provision of the statute to do this. I believe then that they were creating a new road, Birch Bay to Ferndale Road, and it was incorporating the entire route from the ferry all the way up to Mr. Bruns' front porch, I think, from the indication that I can get. There was no width specified, so I believe that the, the default width in the statute would apply. It would be 60 feet.

This oral decision, in turn, is consistent with the trial court's findings of fact and conclusions of law. "[I]f the court's oral decision is consistent with the findings and judgment, it may be used to interpret them." Ferree v. Doric Co., 62 Wn.2d 561, 567, 383 P.2d 900 (1963). The trial court's final finding of fact states:

> The County Commissioners created a new road, Ferndale and Birch Bay Road, incorporating the entire route from the Ferndale ferry all the way to Bruns's home, did not specify a width for the new road, and therefore the default width of sixty (60) feet provided for by statute applies to this new road.

Finding of Fact 18.

There was sufficient evidence, both in testimony adduced and in exhibits presented, to persuade a rational, fair-minded person of the truth of the premises stated by the trial court, including all of the findings to which Yorkston objects. The trial court's findings of fact are clearly supported by substantial evidence.

We affirm the trial court's conclusion that the ROW of the road at issue is 60 feet wide and its declaratory judgment to that effect.[6]

Affirmed.

WE CONCUR:

---

[6] It is thus unnecessary to address Whatcom County's cross appeal.