[No. 14244-2-III. Division Three. June 18, 1996.]

TIM ST. HILAIRE, ET AL., *Respondents*, v. FOOD SERVICES OF AMERICA, INC., D/B/A AMERIFRESH, *Appellant.*

*James A. Perkins* and *Larson & Perkins*, for appellant.

*John S. Moore, Jr., John J. Carroll,* and *Velikanje, Moore & Shore, Inc., P.S.*, for respondents.

THOMPSON, J. — Food Services of America, Inc. (FSA) d/b/a Amerifresh, appeals nine separate judgments, in amounts totaling more than $300,000, on jury verdicts entered in favor of the plaintiff apple growers (growers). The growers alleged FSA violated the commission merchant act, RCW 20.01, and were negligent in handling their 1987 apple crops. FSA contends the court erred when it instructed the jury FSA (1) violated RCW 20.01.330(4) in its sales of the growers' apples to its own affiliates and, therefore, (2) was liable to the growers for gross profits received by the affiliates. FSA also contends (3) the evidence does not support the large negligence verdicts; (4)

the court erred when it denied FSA's motion to dismiss the claim of grower Florian Nordhus on the basis of accord and satisfaction; and (5) prejudgment interest should not have been awarded. We affirm in part and reverse in part.

FSA as a commission merchant receives agricultural products on consignment for processing and sale. RCW 20.01.010(6). In 1987, it entered into contracts with the various growers, in which the growers agreed to deliver their apple crops to FSA to process, pack, warehouse, store and sell the fruit on their behalf. The growers authorized FSA to sell "in such markets and at times and prices determined by [FSA] in its sole discretion." They agreed FSA could "at its discretion, sell all or portions of the crop[s] to its parent or affiliated companies." In addition, the growers approved FSA commingling their crops with crops of other growers for sale as part of a pool.

The growers were dissatisfied with FSA's returns on their apples. In March 1989, they filed suit against FSA. In their amended complaint, they alleged FSA violated the commission merchant act and was negligent in the "warehousing, processing, storing, selling and shipping of plaintiffs' fruit . . . ."[1] FSA countered the low returns were traceable to the fact the 1987 apple crop was the largest ever harvested in Washington, which led to storage problems, and the quality of the apples was adversely affected by high temperatures at the time of harvest.

---

[1]Specifically, the growers complained FSA caused them monetary loss "by failing to properly account for such fruit, by inconsistent and erroneous returns and packouts, by excessive culling, by improper and erroneous grading of fruit, by adjustments in returns which were not reflective of actual packouts and returns, by placing fruit in regular storage which by agreement was to have been in CA storage, by failing to remove fruit from CA storage timely and in accordance with grower instructions, by improper grading between extra fancy and fancy and as between U.S. grades and Washington grades, by leaving apples stacked outside for days before placing them in storage, by failing to provide growers with final returns, by failing to have adequate storage and bins for use by growers at harvest, by pooling CA storage fruit with regular storage fruit, by grading fruit as U.S. grade when such was properly Washington grade, by selling U.S. grades as Washington grades subsequent to packouts, and further, defendant damaged plaintiffs' fruit by failing to properly store, grade, pack, and process such fruit."

At trial, the growers presented evidence FSA sold to its affiliate branches without obtaining the growers' agreement to the sale price or promptly notifying them of the sale, in violation of RCW 20.01.330(4). Several of the growers also offered evidence FSA negligently misrepresented their returns would be higher than the statewide average, misgraded their apples, and "relidded" boxes by selling them at a higher grade than packed and not crediting the grower with a percentage of the higher grade pool.[2]

To measure their damages for FSA's alleged negligent handling of the apples and misrepresentations as to price, the growers relied upon evidence of average statewide returns for 1987 apple sales, compiled by the Wenatchee Growers Clearing House (WGCH). FSA disputed whether the WGCH data reflected a meaningful average crop return.

The court held as a matter of law FSA had violated RCW 20.01.330(4) in sales to its affiliates. It dismissed several other claims as not supported by the evidence. The court submitted the remainder of the claims to the jury with special verdicts asking it to determine (1) the total amount of gross profits received by FSA's affiliates in reselling the growers' fruit; (2) whether FSA was negligent in its handling, packing or selling of the growers' crops in 1987; (3) if it was, whether the growers were damaged by this negligence; and (4) in what amount.[3]

The verdict forms also asked whether FSA misrepresented the amount of returns the growers would receive if they sold through it, and whether FSA misgraded apples. The jury answered "no" to these latter questions. But it found FSA was negligent, and awarded the growers damages which totaled over $300,000. It also awarded the growers approximately $38,000 in damages for FSA's sales to its affiliates in violation of the provisions of RCW

---

[2]We limit our description of the evidence to that pertinent to the issues on appeal.

[3]The format of the special verdicts varied slightly with respect to each individual grower.

20.01.330(4). The court entered judgments on the verdicts and allowed the growers prejudgment interest.

First, FSA contends the court erred when it held FSA violated RCW 20.01.330(4).

The commission merchant act, RCW 20.01, governs the conduct of commission merchants. The growers here contend FSA violated subsection (4) of RCW 20.01.330, which provides a merchant may lose his license if he

> directly or indirectly has purchased *for his own account*[,] agricultural products received by him upon consignment *without prior authority* from the consignor together with *the price fixed* by consignor *or without promptly notifying the consignor* of such purchase.

(Emphasis added.) The court determined as a matter of law FSA did not follow these procedures in selling to its affiliates in 1987, and advised the jury accordingly.

It is undisputed the parties' contracts gave FSA authority to sell all or portions of the growers' crops to its affiliates. However, the growers assert FSA did not comply with the statutory requisite for either an agreed upon fixed price or prompt notice of the sale. FSA argues the requisite is satisfied by the contractual provision which authorizes it to sell at the prices and at the times it determines, in its sole discretion, limited only by its promise to use its best efforts in said sales. Alternatively, it contends compliance with the statutory requisite is impossible, given the fact the growers' crops are pooled, and thereby lose their identity before any sale occurs.

 We found no reported Washington case construing this subsection of the commission merchant act. But application of basic rules of statutory construction favor the growers' construction of the statute. A promise to use "best efforts" is not the equivalent of an agreed upon, fixed price. Nor is the contract provision authorizing FSA to make self-sales the equivalent of "notice" that such sales have in fact occurred. There is no room for judicial interpretation given the plain, unambiguous language of

RCW 20.01.330. *Kadoranian v. Bellingham Police Dep't*, 119 Wn.2d 178, 185, 829 P.2d 1061 (1992).

At trial, FSA offered evidence its practice of pooling apples by grade prevented it from notifying the growers when it sold apples to its affiliates. But it cites no authority for the proposition the statutory "prompt notice" requisite is waived if the merchant handles the product in such a way that it loses its identity as that of a particular grower.[4] We therefore hold the court properly instructed the jury FSA did not comply with RCW 20.01.330(4) in conducting sales of consigned fruit to its affiliates.

Second, FSA assigns error to the giving of instruction 24, which stated the measure of damages for violation of RCW 20.01.330(4) was the affiliates' gross profits from their resales of the fruit.

Instruction 24 advised the jury that, if it found FSA earned any gross profits from resale of the fruit by its affiliates, it should award those amounts to the growers. FSA objected to the instruction on two grounds. One, it argued net profits instead of gross profits was the correct measure of damages. Two, it asserted the lack of proof the growers sustained actual damages from the violations (i.e., proof the affiliates paid less than market value for the apples) was a complete defense to the alleged breach of statutory duty. FSA offered proposed instruction 24, which read in part: "When an agency breach is proven, it is a good defense to liability that the agent's misconduct did not result in any loss or damage to the principal."

The jury returned a verdict of approximately $38,000 on behalf of the growers for FSA's failure to comply with the procedures of RCW 20.01 for self–sales. This amount was based upon the testimony of the growers' expert, James Fitch, who estimated the price at which the affiliates sold the apples, minus transportation costs, but allowed no deduction for other expenses. On behalf of FSA, Yakima

---

[4]Practical problems applying the statute do not obviate its clear requirements. The solution is to change the statute.

plant manager Terry Harrison testified the affiliates paid market rates or more for the fruit.

In *Cusick v. Phillippi*, 42 Wn. App. 147, 153, 709 P.2d 1226 (1985), this court stated "[t]he standard of care of a commission merchant has not been expressed in fiduciary terms in Washington, but certain duties have been recognized." Those duties include open disclosure, full accounting, and the exercise of that degree of care and diligence a prudent businessman would exercise in the management of his own affairs. *Id.* at 153. FSA's violation of RCW 20.01.330(4) does not constitute a breach of any of these common law duties.

Nevertheless, in defending "gross profits" as the proper measure of damages for violation of the statute, the growers cite rules developed in cases involving breach of fiduciary duty in principal/agent situations. *See Neis v. Farquharson*, 9 Wash. 508, 37 P. 697 (1894), *overruled on other grounds by Barto v. Stewart*, 21 Wash. 605, 59 P. 480 (1899) *and Ward v. Magaha*, 71 Wash. 679, 129 P. 395 (1913); *Raymond Farmers Elevator Co., v. American Surety Co.*, 207 Minn. 117, 290 N.W. 231, 235, 126 A.L.R. 1351 (1940). The holdings of these and other cases are reflected in the RESTATEMENT (SECOND) OF AGENCY § 403 (1958). Section 403 states: "If an agent receives anything as a result of his violation of a duty of loyalty to the principal, he is subject to a liability to deliver . . . its proceeds, to the principal." "An agent who receives a bribe or otherwise profits improperly *cannot*, in an action by the principal to recover it or its value, *deduct the amount of expense to which he has been put in acquiring it.*" Section 403 cmt. c. (emphasis added). The reason for the award of gross profit damages for a breach of fiduciary duty is to discourage fiduciaries from abusing their trust relationship. *Raymond*, 290 N.W. at 235.

The question then is whether an award of gross profits is necessary to discourage commission merchants from violating the requirements of RCW 20.01 for fixed price and/or prompt notification? We conclude it is not.

FSA did not violate a trust relationship. The growers' contract authorized FSA sales to its affiliates. FSA fully reported the details of the pooled sales to the growers. Imposing liability on FSA for its affiliates' net profits provides a sufficient incentive for statutory compliance in these circumstances.[5]

We reverse the jury's award of $38,000 to the growers and remand for entry of judgment for $3,800, the amount of FSA affiliates' net profits from the resales.

Third, FSA asserts the evidence does not support the large negligence verdicts for the growers. The growers argue it is impossible for this court to review FSA's challenge to the negligence verdicts because FSA did not supply the court a complete report of the proceedings below.

RAP 9.2(c) permits the appealing party to arrange for preparation of less than all of the verbatim report, provided it serves on the respondent "a description of the . . . verbatim report . . . which the party intends to include . . . and a *statement of the issues* the party intends to present on review." (Emphasis added.) The "Statement of Issues" filed by FSA did not include a challenge to the sufficiency of the evidence. Yet, in its opening brief, FSA assigned error to the trial court's denial of its motion for directed verdict on the growers' "low sales return" damage claims. It also assigned error to the jury's negligence verdicts as not supported by the evidence. FSA framed the relevant issues as follows:

> 5. Does *substantial evidence* support the jury's negligence damage verdicts?

> 6. Are the jury's "general negligence" verdicts and interrogatory answers inconsistent with Washington law and the *trial evidence* produced?

(Emphasis added.)

The issues presented in FSA's brief clearly are outside

---

[5]If FSA had acted without prior authority to sell to its affiliates, it would have violated the statute and breached its fiduciary duty of full disclosure. We do not decide what measure of damages is appropriate in that situation.

the scope of those identified in the statement it filed when it arranged for a partial report of proceedings. Further, the partial report includes very little of the growers' case in chief—a case FSA now asks this court to hold produced insufficient evidence to support the jury's negligence verdicts in the growers' favor.

■ Accordingly, we refuse to reach the merits of the issues identified above because FSA has not provided us with the necessary record. "The party seeking review has the burden of perfecting the record so that this court has before it all of the evidence relevant to the issue." *Allemeier v. University of Washington*, 42 Wn. App. 465, 472, 712 P.2d 306 (1985) (citing RAP 9.2(b) and *State v. Jackson*, 36 Wn. App. 510, 516, 676 P.2d 517, *aff'd*, 102 Wn.2d 689, 689 P.2d 76 (1984)), *review denied*, 105 Wn.2d 1014 (1986). Without a complete report of the growers' evidence, we cannot judge the sufficiency of that evidence to support the verdicts.

Fourth, FSA contends the court erred in denying its motion for a directed verdict against Florian Nordhus on his claim for damage to his Granny Smith apples. FSA argues the undisputed evidence established Mr. Nordhus entered into an accord and satisfaction with FSA when he accepted its check in payment for the apples.

Because of the large apple harvest in 1987, refrigerated storage space was in short supply. Phillip Clark, the FSA fieldman who dealt with grower Florian Nordhus, testified that Mr. Nordhus' 96 bins of Granny Smith apples were left unrefrigerated and, as a result, spoiled for all purposes other than for use in processed food. In determining what he believed to be a fair compensation for Mr. Nordhus' loss, Mr. Clark reviewed records of Mr. Nordhus' 1986 crop and also factored in 1987 conditions not applicable to the 1986 calculations. Mr. Clark set $91/bin as a fair amount, and tendered a check to Mr. Nordhus for that figure after explaining how he arrived at it. Mr. Clark testified Mr. Nordhus took the check and cashed it, without telling him he believed the amount to be too little.

Mr. Nordhus stated he told Mr. Clark the figure was "awful cheap," but he cashed the check because he needed the money.

■■ An accord and satisfaction consists of: "(1) a bona fide dispute; (2) an agreement to settle that dispute; and (3) performance of that agreement." *Ward v. Richards & Rossano, Inc.*, 51 Wn. App. 423, 429, 754 P.2d 120 (citing *Perez v. Pappas*, 98 Wn.2d 835, 843, 659 P.2d 475 (1983)), *review denied*, 111 Wn.2d 1019 (1988). When the defendant is a fiduciary, he must show the accord was "an express agreement made upon full revelation." *Ward*, 51 Wn. App. at 429 (citing *Perez*, 98 Wn.2d at 844). As a matter of law, there is no substantial evidence or reasonable inference to support a verdict for Mr. Nordhus on this issue. *Wright v. Engum*, 124 Wn.2d 343, 356, 878 P.2d 1198 (1994). Mr. Nordhus accepted the check and remarked only that FSA's valuation of the apples was "awful cheap." Acceptance of the check without further challenge to FSA's method of computing the amount, necessarily leads to the conclusion he entered into an agreement to settle the damage claim. The court erred in submitting the issue to the jury. No issue of fact existed as to whether Mr. Nordhus agreed to accept the check as payment of the damages.

Fifth, FSA assigns error to the trial court's award of prejudgment interest to the growers.

■ In Washington, the court can properly award prejudgment interest when the amount of the claim is liquidated, i.e., "when the evidence furnishes data which, if believed, makes the exact computation of the amount possible without resort to opinion or discretion." *Walla Walla County Fire Dist. No. 5 v. Washington Auto Carriage, Inc.*, 50 Wn. App. 355, 358, 745 P.2d 1332 (1987). *See also Hansen v. Rothaus*, 107 Wn.2d 468, 472, 730 P.2d 662 (1986); *Prier v. Refrigeration Eng'g Co.*, 74 Wn.2d 25, 33, 442 P.2d 621 (1968). It is " '[t]he nature of the claim, not its characterization as sounding in contract or negligence, [that] decides the issue." *Washington Auto*, 50 Wn. App. at 358 (quoting *Hansen*, 107 Wn.2d at 472).

Here, the experts called by each side disagreed as to the amount of damages. The growers' expert, James Fitch, used the WGCH's price averages to establish what the growers believed their returns would have been, absent FSA's alleged negligence. But Mr. Fitch admitted WGCH's calculations miss about 12 percent of all sales, many of which are for lower prices. FSA presented evidence it paid the growers more than they would have received had they done business elsewhere. The jury awarded damages in amounts which fell between the figures testified to by the experts. These circumstances support a conclusion the damages were unliquidated. The jurors necessarily used opinion and discretion in deciding what amount to award each grower.

The growers argue that so long as the *measure* of damages is certain, prejudgment interest is appropriately awarded. However, the cases they rely upon do not support their position. For example, they cite language used by the court in *Aker Verdal A/S v. Neil F. Lampson, Inc.*, 65 Wn. App. 177, 191, 828 P.2d 610 (1992), in analyzing a precedent. *Aker Verdal* described *Maryhill Museum of Fine Arts v. Emil's Concrete Constr. Co.*, 50 Wn. App. 895, 903, 751 P.2d 866, *review denied*, 111 Wn.2d 1009 (1988), as holding: "[S]ince the [damaged property] . . . was unique and thus without a market value, the measure of damages was left to the trial court's discretion and the damages were therefore unliquidated[.]" The foregoing does not mean a measure of damages, calculated by reference to fair market value, always results in a liquidated amount. Indeed, many variables can affect the assessment of market value. *See Donaldson v. Greenwood*, 40 Wn.2d 238, 252, 242 P.2d 1038 (1952).

We hold the trial court erred when it awarded the growers prejudgment interest.

In summary, we affirm the trial court's holding FSA violated RCW 20.01.330(4), but reverse the awards for "gross profits." We remand for entry of judgments in amounts equal to FSA affiliates' net profits in reselling

the growers' fruit. We affirm the judgments awarding the growers damages for FSA's negligence in handling their fruit. We reverse the judgment awarding Florian Nordhus damages for his unrefrigerated apples. Finally, we reverse the trial court's award of prejudgment interest to the growers.

SWEENEY, C.J., and MUNSON, J., concur.