IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| In the Matter of the Domestic Violence Protection Order for<br><br>NANEE VINOD BANDRAPALLI,<br><br>                    Appellant,<br><br>    and<br><br>JILL K. BANDRAPALLI,<br><br>                   Respondent. | No. 87363-6-I<br><br>DIVISION ONE<br><br>UNPUBLISHED OPINION |

SMITH, J. — Five months after the family law court entered final orders, including a parenting plan that placed restrictions on the father based on domestic violence history, the father petitioned for a domestic violence protection order (DVPO) protecting him from the children's mother. The trial court made credibility findings adverse to the father, found that he failed to establish domestic violence by a preponderance of the evidence, denied the petition, and realigned the parties. The father appeals, challenging a number of factual findings, the decision to realign the parties, evidentiary rulings, and the order denying revision. We affirm.

FACTS

In December 2023, after a two-week trial, the trial court dissolved the parties' 12-year marriage and entered orders providing for the care and support of their two minor children. The parenting plan placed limitations on the father's

contact with the children under RCW 26.09.191 based on detailed findings about the father's history of domestic violence. The plan provided for phased-in residential time with the father conditioned on his enrollment and progress in domestic violence (DV) treatment.[1] The father appealed the final orders in the family law matter, and on April 3, 2024, a commissioner of this court dismissed the appeal as untimely.

On May 24, 2024, the father, representing himself, petitioned for a DVPO. According to the petition, the precipitating event was an alleged assault by the mother at the parties' son's May 4, 2024 soccer match. The father claimed he alerted the mother to safety concerns because she left their nine-year-old daughter unattended in her vehicle during the game. The father said the mother confronted him as he stood next to her vehicle watching their daughter. According to the father, the mother yelled at him to move away from her vehicle, "blocked" his way in the narrow space between the rows of cars, "shov[ed]" him into the adjacent vehicle, kicked him, and forcefully "pushed" him on the left shoulder. The mother then moved her vehicle to a different parking area and the father called the police and reported the incident.

The father's DVPO petition also maintained that the mother had a "history of committing domestic violence" against the father, citing specific incidents both during the marriage and after the 2023 dissolution. In addition to an order protecting him from the mother, the father requested that the court order a mental

---

[1] As of August 2024, the father acknowledged he had not yet begun DV treatment.

health evaluation, domestic violence treatment, restrict abusive litigation, and order the mother to pay his fees and costs. Among other materials, the father provided a police report and a medical record stemming from a visit to a hospital emergency department a few days after the alleged assault.

The court entered a temporary protection order. That order did not include the parties' children, noting that the father "does not wish to include the children."

The father moved to quash the mother's discovery requests related to Child Protective Services (CPS) records. The mother moved to realign the parties and moved to restrict abusive litigation. *See* RCW 7.105.210 (allowing realignment of the parties to a DVPO petition upon a finding that the original petitioner is the perpetrator of abuse and the original respondent is the victim). The mother also filed a declaration describing her version of the incidents identified by the father and asserting that, since the dissolution, the father continued to harass, stalk, and raise false allegations against her. The mother and father each submitted a witness statement in support of their accounts of the May 4 soccer game incident, but neither witness observed the confrontation by the mother's vehicle.

On August 1, 2024, the father filed an amended DVPO petition, seeking to include the children as protected parties, and requesting that the children and family dog be placed in his care. In an accompanying declaration, the father explained that while he initially sought an order only to protect himself, evidence surfaced during the litigation showing that "both children have suffered physical abuse and have had exposure to domestic violence." In addition to the

3

allegations described in the original petition, the amended petition described incidents of physical discipline by the mother and alleged that she exposed the children to domestic violence.

Following an August 15, 2024 hearing, a superior court commissioner denied the father's petition, granted the motion to realign the parties, and entered a temporary order protecting the mother.[2] The court found that the father failed to establish domestic violence by a preponderance of the evidence with respect to any alleged incident. The court entered 40 written findings in support of its order, including a finding that, according to the CPS Sealed Confidential Report, there were no "founded" findings of abuse by the mother. The court also found "the Respondent/mother credible, and the Petitioner/father not credible" and "no basis" existed for issuing a protection order against the mother.

The father moved to revise the commissioner's order. A superior court judge denied the motion. The father appealed.

On October 25, 2024, after a hearing on the realigned petition, a superior court commissioner denied issuance of a DVPO order to protect the mother. On the father's motion for reconsideration, the commissioner amended one of the background factual findings. The mother did not appeal.

ANALYSIS

Challenging the trial court's decisions denying a DVPO and realigning the parties, the father asserts that substantial evidence does not support several

---

[2] The court reserved its ruling on the motion for an order restricting abusive litigation and the mother's request for attorney fees.

4

findings of fact, the court erred in excluding evidence, and the order on revision does not reflect the statutorily required review.[3]

A commissioner's decision denying a DVPO is subject to revision by the superior court. RCW 2.24.050. On a motion to revise, the superior court reviews the commissioner's findings of fact and conclusions of law de novo based on the evidence and issues presented to the commissioner. *In re Marriage of Moody*, 137 Wn.2d 979, 992-93, 976 P.2d 1240 (1999). A denial of revision "constitutes an adoption of the commissioner's decision, and the court is not required to enter separate findings and conclusions." *Maldonado v. Maldonado*, 197 Wn. App. 779, 789, 391 P.3d 546 (2017). On appeal, we review the superior court's ruling, not that of the commissioner. *Maldonado*, 197 Wn. App. at 789.

We review a superior court's decision to deny a petition for a protection order for an abuse of discretion. *Maldonado*, 197 Wn. App. at 789. A court abuses its discretion when its decision is manifestly unreasonable, based on untenable grounds or reasons, or reached by applying the wrong legal standard. *Maldonado*, 197 Wn. App. at 789. We defer to the trial court's determinations on the persuasiveness of the evidence, witness credibility, and conflicting testimony. *Snyder v. Haynes*, 152 Wn. App. 774, 779, 217 P.3d 787 (2009).

This court reviews challenges to the trial court's findings for substantial evidence, again, deferring to the trier of fact on questions of witness credibility, conflicting testimony, and the persuasiveness of the evidence. *In re Vulnerable*

---

[3] We address each of the father's claims to the extent he devotes arguments to his assignments of error and the arguments are adequately supported by citations to legal authority and to the record. RAP 10.3(a)(6).

*Adult Petition for Knight*, 178 Wn. App. 929, 936-37, 317 P.3d 1068 (2014). "Evidence is substantial if it is sufficient to persuade a fair-minded, rational person of the declared premise." *Merriman v. Cokely*, 168 Wn.2d 627, 631, 230 P.3d 162 (2010).

Chapter 7.105 RCW governs the issuance of civil protection orders. Under RCW 7.105.225(1), "[t]he court shall issue a protection order if it finds by a preponderance of the evidence that the petitioner has proved the required criteria." A preponderance of the evidence means that the proposition is more probably true than not. *Spivey v. City of Bellevue*, 187 Wn.2d 716, 728, 389 P.3d 504 (2017). The petitioner must show they have been "subjected to domestic violence by the respondent." RCW 7.105.225(1)(a). The definition of "domestic violence" includes "[p]hysical harm, bodily injury, assault, or the infliction of fear of physical harm, bodily injury, or assault; . . . coercive control; unlawful harassment; or stalking of one family or household member by another family or household member." RCW 7.105.010(9)(b). A "petitioner may petition for relief . . . on behalf of family or household members who are minors." RCW 7.105.100(1)(a).

<u>Finding of Fact No. 27</u>

The father challenges the trial court's finding that he failed to establish domestic violence on May 4, 2024, and that the mother's declaration testimony about the soccer match incident was "credible."

The father contends the court abused its discretion by crediting the mother's declaration testimony because she admitted they "brushed" shoulders

as they passed each other in the narrow space between vehicles and admitted the father was already standing next to her vehicle when she approached. The father further contends that a preponderance of the evidence established domestic violence on May 4, 2024 because (1) the police report described the incident as domestic violence assault in the fourth degree; (2) he called the police before the mother reported to a friend that she might need assistance; (3) the mother's supporting evidence was merely a "second hand" declaration "shaped after police had arrived;" (4) medical records demonstrated the assault caused injury; (5) according to a witness declaration, he was not agitated at the time of the confrontation; and (6) the court ultimately declined to enter a DVPO protecting the mother.

The father's arguments rely on his own selective and subjective interpretation of the evidence and fail to appreciate our deference to the trial court's findings of credibility and persuasiveness of the evidence. The court was not required to discount the mother's denial of physical assault because the parties' accounts were consistent as to some details. Nothing in the record suggests the court relied on either of the parties' third-party declarations that reported no observations of the interaction in the parking area. The police report was based on only the father's statement and the court was not required to treat its characterization of the incident as dispositive. The report also supported an inference that the claims asserted in the DVPO petition were embellished, as the father failed to mention a hard shove to the shoulder, kicking, or any injuries at the time of the incident. Likewise, the court was entitled to conclude that medical

records showing the father sought treatment for "[l]eft elbow and left pinky pain" more than two days later did not corroborate the claim of domestic violence. Substantial evidence supports the trial court's finding.

Finding of Fact No. 25

The father similarly challenges the court's finding the mother's account of a December 23 incident was "credible."

The parties agreed that, on the day the trial court entered its final orders, the mother went to the father's home to pick up the children. The mother said she was holding her son's oversized "Squishmallow"[4] when the father grabbed the other side of the toy, "swung her around," and then yelled to the children, " 'Did you see that, your mom hit me!' " The father, on the other hand, alleged he was holding the stuffed toy when the mother "forcibly" grabbed it from him and upset the children.

The father challenges the finding, claiming the court untenably "excused" the mother's violation of the parenting plan's provisions for exchanging the children, which prohibited her from going to his home unannounced and getting out of her vehicle. But the father initiated a DVPO proceeding to seek protection from domestic violence, not a contempt proceeding to address alleged noncompliance with the parenting plan. Nothing in the DVPO statute suggests that a violation of exchange provisions equates to domestic violence. The father fails to explain how grabbing a toy from his hands met the definition of domestic

---

[4] A Squishmallow is a brand of stuffed toy that is round and comes in a variety of colors and sizes.

violence under RCW 7.105.010(9)(b).  And again, most importantly, we do not reweigh credibility.

<u>Finding of Fact No. 29</u>

The father challenges the following finding:

Regarding the other many meandering allegations referred to as "Past Incidents," raised by the Petitioner/father in support of his request for a Civil Protection Order, this Court finds them without merit, and most were litigated in the in the family law proceedings before Judge Segal, and do not support entry of a Civil Protection Order protecting the Petitioner from Respondent.

The father contends the court abused its discretion by dismissing his claims as "meandering."  And, pointing to allegations of domestic violence that occurred after the dissolution, the father claims substantial evidence does not support the finding that "most" claims were litigated in the dissolution proceeding.

The trial court did not dismiss any of the father's claims because they were "meandering."  The court addressed, in separate findings, the primary incidents that were the focus of the father's petition and declarations.  As to other allegations, the court found the father did not meet his burden to prove domestic violence by a preponderance of the evidence and none of the alleged incidents supported the entry of a DVPO.

The "Past Incidents" section of the father's amended petition referenced in the finding primarily discussed incidents that occurred in 2023, while the family law proceeding was still ongoing.[5]  The father identifies nothing in the record to

---

[5] The "Past Incidents" also included the father's claim that the mother submitted "false statements" from certain witnesses, and made false statements herself, in response to his DVPO petition.  The father did not appear to allege

contradict the court's finding that these incidents were litigated in the family law matter. The father asserts, without elaboration or citation to authority, that collateral estoppel did not apply. We unaware of any authority supporting this position and the statute precludes only the denial of a petition because relief may be available in a different proceeding. RCW 7.105.225(2)(d). The father's challenge to this finding fails.

Finding of Fact No. 30

The father challenges the evidence supporting finding of fact 30:

Ms. Barton (the parenting evaluator from the family law matter) stated in her report that the Petitioner/father is actively trying to destroy the mother's relationship with the children. This Court finds the Petitioner's request for a domestic violence protection order to be retaliatory against the mother—perhaps because of his unsuccessful trial efforts, restricted time with his children, failed [and] untimely appeal and unfounded CPS complaints.

(Emphasis omitted.)

As a factual matter, the father maintains that dismissal of his appeal could not have motivated his DVPO petition because the appeal was dismissed on May 28, 2024, four days after he filed the petition. But the record confirms that a commissioner of this court denied the father's motion to enlarge the time to appeal and dismissed the appeal as untimely on April 3, 2024. The May 28, 2024 decision declining to modify the commissioner's ruling does not alter the timing of the dismissal. And given the timing, the evidence supports the

that the mother's filings constituted domestic violence, and the challenged filings do not appear to be a part of the record before us.

10

inference that the father was potentially motivated by the dismissal of his appeal, among other things.

According to the father, nothing beyond the mother's speculative and self-serving assertions supports the court's finding of retaliatory motive. But this petition followed after (1) unsuccessful efforts to obtain findings and provisions unfavorable to the mother by means of CPS referrals and arguments at trial, (2) the entry of orders that restricted the father's time with the children and imposed treatment requirements, and finally, (3) this court's dismissal of his appeal. Substantial evidence in the record supports these objective facts which give rise to a reasonable inference of retaliation.

And significantly, the trial court found that a retaliatory motive was consistent with the findings of the court-appointed parenting evaluator in the family law matter who prepared a 69-page report following an investigation. That report is not included in the record designated on appeal. Accordingly, we are unable to fully review the sufficiency of the evidence supporting the finding of retaliation. *See St. Hilaire v. Food Servs. of Am., Inc.*, 82 Wn. App. 343, 352, 917 P.2d 1114 (1996) (the appellant bears the burden of presenting a record adequate for review of the issues raised on appeal).

The father also suggests that the trial court later struck the finding of retaliation. This argument is based on a finding of fact entered in the October 25, 2024 order (declining to issue a DVPO protecting the mother), which stated, in part, that his "appeal was dismissed as untimely on April 3, 2024." The commissioner amended the finding on reconsideration as follows: "The appeal

was dismissed—see attachment to this Order. See also #259 in #22-3-00803-6."
(Boldface omitted.) The referenced attachments are the commissioner's April 3,
2024 ruling and this court's mandate.

The order on reconsideration did not strike or amend any finding or
language in the August 15, 2024 order before us on review. It did not address
retaliation. And the amended finding is substantively no different from the
original finding, because the attachment unambiguously states that this court
dismissed the father's appeal on April 3, 2024.

The father contends the court's finding of retaliatory motive shows that trial
court focused on "prior litigation history," rather than "present risk" of harm. We
disagree. The trial court expressly applied the applicable standard under
RCW 7.105.225 and declined to issue a DVPO because the father failed to
prove, by a preponderance of the evidence, that he was subjected to domestic
violence by the mother.

<u>Coercive Conduct/Realignment of the Parties</u>

The father challenges the realignment of the parties and the following
related factual findings:

31. Per the Petitioner/mother, this is the 5th time she has gone to
court in the eight (8) months post their divorce.

…

34. Over the court of their marriage, the Petitioner/father is
documented to have committed acts of domestic violence and
his victim is the Respondent/mother. His attempt to obtain a
domestic violence protection order against the
Respondent/mother is a continuing effort of his harassment,
abusive/retaliatory litigation, and coercive control.

35.   This Court finds the Petitioner/father's actions could be construed as coercive control as defined by RCW 7.105.010(4)(a).

The statute defines "coercive control" as "a pattern of behavior that is used to cause another to suffer physical, emotional, or psychological harm, and in purpose or effect unreasonably interferes with a person's free will and personal liberty." RCW 7.105.010(4)(a). The statute's non-exclusive list of examples of coercive control includes "[e]ngaging in vexatious litigation or abusive litigation as defined in RCW 26.51.020 against the other party to harass, coerce, or control the other party, to diminish or exhaust the other party's financial resources, or to compromise the other party's employment or housing." RCW 7.105.010(4)(a)(v).

According to the father, the finding that the mother was in court five times after the dissolution is inconsistent with his declaration testimony that the May 2024 DVPO petition was the only litigation he initiated against the mother. He also contends the finding conflicts with information in the Judicial Information System (JIS) database.[6]

There is no evident conflict between the parties' declarations. Even if a conflict did exist, the mother's testimony, which the court found to be credible, supports the finding. And here again, nothing in the appellate record allows us to evaluate whether the finding is consistent with information in the JIS database.

The father claims realignment of the parties cannot be premised on his "lawful petitioning activity." And he asserts that the decision to realign the parties

---

[6] The JIS is the primary information system utilized by courts in Washington. *In re Pers. Restraint of Adolph*, 170 Wn.2d 556, 570, 243 P.3d 540 (2010).

and the findings supporting that ruling were "discredited" by the October 2024 order that denied a DVPO to protect the mother and declined to impose any order restricting abusive litigation.

Because the temporary DVPO protecting the mother has now expired, it does not appear that this court can provide effective relief by reversing the challenged findings and ruling realigning the parties. *See SEIU Healthcare 775NW v. Gregoire*, 168 Wn.2d 593, 602, 229 P.3d 774 (2010) (issue is moot if this court no longer can grant effective relief); *Blackmon v. Blackmon*, 155 Wn. App. 715, 717, 230 P.3d 233 (2010) (appeals of expired domestic violence protection orders are generally moot). Aside from mootness, the father's argument fails to acknowledge that the statute defines domestic violence to encompass litigation activity that is intended to harass and control another. Here, the court found that the father's petition was retaliatory, not asserted for a legitimate purpose, and was part of a pattern of ongoing harassment and attempts to exert coercive control. And while the court later declined to impose a DVPO protecting the mother, neither the mother's petition nor any other materials filed between the August and October orders are included in the appellate record. Without knowing what claims, arguments, and evidence were before the court, we cannot say whether or how any determinations in the October 2024 order implicated the court's earlier findings and decision.

<u>Evidentiary Rulings</u>

The father claims the court misapplied the applicable evidentiary rules when it excluded "Exhibit 3" and "dismissed" the CPS Sealed Confidential report.

The proposed exhibit does not appear to be included in the record on appeal, nor does the record appear to include the parties' arguments, or court's ruling, which occurred before the August 15, 2024 hearing. Again, the record is insufficient to review this claim of error.

As to the CPS report, the findings confirm the court's consideration of the evidence. And while the father appears to contend the court should have focused on aspects other than the results of CPS investigations, we decline the invitation to draw different conclusions from, or reweigh, the evidence on appeal.

Order on Revision

Lastly, the father claims the superior court's order on revision fails to demonstrate that the court conducted the review required by statute. But, as explained, the superior court is not required to enter separate findings and conclusions when it denies a motion to revise. *Maldonado*, 197 Wn. App. at 789. No authority supports the father's position that the revision court was required to set forth its reasoning for adopting the commissioner's order and findings. Nothing in the record supports the claim that the superior court failed to conduct a de novo review.

Attorney Fees

The mother requests attorney fees, claiming the father's appeal is frivolous. RAP 18.9 allows this court to award a party attorney fees as a sanction when the opposing party files a frivolous appellate action. *Reid v. Dalton*, 124 Wn. App. 113, 128, 100 P.3d 349 (2004). "An appeal is frivolous if there are no debatable issues on which reasonable minds might differ and it is so totally

devoid of merit that there is no reasonable possibility of reversal." *In re Marriage of Schnurman*, 178 Wn. App. 634, 644, 316 P.3d 514 (2013). "All doubts as to whether the appeal is frivolous should be resolved in favor of the appellant." *Schnurman*, 178 Wn. App. at 644.

Considering the credibility findings and deferential standard of review, we are convinced that the father's appeal of the denial of a DVPO presents no debatable issues on which reasonable minds might differ. However, to the extent the father challenged the realignment of the parties in light of the ultimate denial of a DVPO protecting the mother, while unsuccessful and arguably moot, we cannot say the appeal is frivolous. We award reasonable appellate attorney fees to the mother incurred in connection with the frivolous aspect of the father's appeal under RAP 18.9, subject to a request that is appropriately segregated and otherwise complies with RAP 18.1.

Affirmed.

_____

WE CONCUR:

_____    _____